1  Athena Reddersen
2  athenareddersen@proton.me
   4301 Jamboree Road, Unit 249
3  Newport Beach, California, 92660
   949-560-2765
4  *Plaintiff, In Pro Per*



IFP Submitted

8        **UNITED STATES DISTRICT COURT**

9  **FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

12  ATHENA REDDERSEN, an individual,          **Case No.** 8:23-cv-02198-DOC-(ADSx)

14          Plaintiff,                        *Assigned for all purposes to:*

15      vs.                                   Honorable:

17  THE UNITED STATES OF AMERICA;             Courtroom:
    THE UNITED STATES DEPARTMENT
18  OF JUSTICE; THE FEDERAL BUREAU            **DEMAND FOR JURY TRIAL**
    OF INVESTIGATION; THE STATE OF
19  CALIFORNIA; THE CALIFORNIA                **PLAINTIFF ATHENA REDDERSEN'S**
20  DEPARTMENT OF JUSTICE; APPLE              **COMPLAINT FOR DAMAGES:**
    INC., a California Corporation; GOOGLE,
21  LLC, a Delaware Limited Liability
22  Corporation; GOOGLE                       **(1) VIOLATION OF THE FIRST**
    INTERNATIONAL, LLC, a Delaware                **AMENDMENT OF THE BILL OF**
23  Limited Liability Corporation;                **RIGHTS;**
24  ALPHABET INC., A Delaware                 **(2) VIOLATION OF THE FOURTH**
    Corporation; DROPBOX, INC., a Delaware        **AMENDMENT OF THE BILL OF**
25  Corporation; THE DIRECTV GROUP,               **RIGHTS;**
26  INC., a Delaware Corporation; DIRECTV     **(3) VIOLATION OF THE FIFTH**
    INTERNATIONAL, INC., a Delaware               **AMENDMENT OF THE BILL OF**
27  Corporation; AT&T CORP., a New York           **RIGHTS;**
28  Corporation; AT&T CORP., a New York       **(4) VIOLATION OF THE THIRTEENTH**

1

Corporation; AT&T SERVICES, INC., a Delaware Corporation; JUAN CARLOS REDDERSEN, an individual; MAYITH DAYANA REDDERSEN, an individual; ANTONIO MARCO GUTIERREZ, an individual; BRITTNEY O'BRIEN, an individual; and DOES 1 TO 10, inclusive,

Defendants.

AMENDMENT OF THE U.S. CONSTITUTION;
(5) VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION;
(6) VIOLATION OF JUSTICE AGAINST SPONSORS OF TERRORISM ACT;
(7) VIOLATION OF 18 U.S.C. § 38
(8) VIOLATION OF CIVIL R.I.C.O. ACT, 18 U.S.C. § 1962(c);
(9) VIOLATION OF 18 U.S.C. § 1962(d);
(10)   OBSTRUCTION;
(11)   PEONAGE, SLAVERY, AND TRAFFICKING IN PERSONS;
(12)   VIOLATION OF FOSTA-SESTA ACT;
(13)   VIOLATION OF THE SAVE ACT OF 2015;
(14)   VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1114;
(15)   VIOLATION OF THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT, 15 U.S.C. § 1125(d);
(16)   VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030;
(17)   15 U.S.C. § 8131;
(18)   VIOLATION OF CAL. CIV. CODE § 52.7;
(19)   VIOLATION OF CAL. HEALTH & SAF. CODE § 24176;
(20)   VIOLATION OF CALIFORNIA CONSTITUTION – INALIENABLE RIGHTS;
(21)   VIOLATION OF CAL. CIV. CODE § 1708.8;
(22)   VIOLATION OF CAL. CIV. CODE § 52.5;
(23)   SEXUAL HARRASMENT, CAL.

2

CIV. CODE § 51.9;
(24)   VIOLATION OF RALPH CIVIL
        RIGHTS ACT OF 1976;
(25)   VIOLATION OF TOM BANE
        CIVIL RIGHTS ACT;
(26)   VIOLATION OF CAL. PENAL
        CODE § 502;
(27)   VIOLATION OF CAL. BUS. &
        PROF. CODE §§ 17500, *et seq.*;
(28)   COMMON COUNTS; ASSUMPSIT;
        AND UNJUST ENRICHMENT/
        RESTITUTION;
(29)   COMMON LAW TRADEMARK
        INFRINGEMENT;
(30)   COMMON LAW CONVERSION;
(31)   DISPARAGEMENT-TRADE
        LIBEL;
(32)   FRAUD – CONCEALMENT
        (COUNT 1);
(33)   FRAUD – CONCEALMENT
        (COUNT 2);
(34)   FRAUD – INTENTIONAL
        MISREPRESENTATION (COUNT 3);
(35)   FRAUD – INTENTIONAL
        MISREPRESENTATION AND
        DECEIT (COUNT 4);
(36)   CONSPIRACY AND
        INTENTIONAL
        MISREPRESENTATION (COUNT 5);
(37)   AIDING AND ABETTING
        (COUNT 1);
(38)   AIDING AND ABETTING
        (COUNT 2);
(39)   AIDING AND ABETTING
        (COUNT 3);
(40)   AIDING AND ABETTING
        (COUNT 4);
(41)   AIDING AND ABETTING
        (COUNT 5);
(42)   AIDING AND ABETTING

PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES

(COUNT 6);
(43)   BREACH OF CONTRACT;
(44)   AGGRAVATED ASSAULT &
        BATTERY (COUNT 1);
(45)   AGGRAVATED ASSAULT
        (COUNT 2);
(46)   FALSE IMPRISONMENT –
        HUMAN TRAFFICKING;
(47)   TRESPASS TO CHATTEL;
(48)   STALKING;
(49)   INVASION OF PRIVACY –
        INTRUSION; MISAPPROPRIATION;
        PUBLIC DISCLOSURE OF PRIVATE
        FACTS; FALSE LIGHT; AND
        CALIFORNIA CONSTITUTIONAL
        RIGHT TO PRIVACY;
(50)   DEFAMATION – LIBEL AND
        SLANDER (COUNT 1);
(51)   DEFAMATION – LIBEL AND
        SLANDER (COUNT 2);
(52)   INTENTIONAL INFLICTION OF
        EMOTIONAL DISTRESS;
(53)   PUBLIC NUISANCE;
(54)   STRICT LIABILITY –
        ABNORMALLY DANGEROUS
        ACTIVITIES

4

PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION.................................................................... **5**

II. THE PARTIES....................................................................... **5**

    A.    Plaintiff......................................................................... **5**

    B.    Defendants.................................................................... **6**

II. JURISDICTION AND VENUE............................................... **12**

III. FACTS.................................................................................. **13**

    A. J.C. Reddersen's relationship with Plaintiff's mother and his employment background as an aerospace engineer................................................. **13**

    B. J.C. Reddersen's defrauding of the United States by and through the misappropriation, conversion and embezzlement of government assets and intellectual properties; hardware and software................................... **14**

        1. J.C. Reddersen's kidnapping of Plaintiff in 1996 to the State of Florida and his conspiracy to defraud the United States with cooperating neurosurgeon, Doe Defendant No. 1......................................... **15**

        2. J.C. Reddersen's "surveillance state" over Plaintiff by and through the defrauding of the United States; his medical experiment and surgical operation forced upon Plaintiff; the consequences of the unprecedented and inhumane human experimentation and; the medical discovery of merging human biology directly with modern-day solar technology/electricity and classified trade secrets...................... **17**

    C. The state-sponsored software/technology assets re-routed and stored on a fraudulent cyber domain and its original pirated functioning of an online "time machine" and/or cloud-based calendar archive of Plaintiff's private life events by and through advanced surveillance technology, implemented and pirated by J.C. Reddersen................................................................... **23**

D. Plaintiff becomes aware of the isolated and targeted surveillance being forced upon her in January 2012................................................................... 33

E. The conspiracy and the aiding and abetting between M.D. Reddersen and J.C. Reddersen in January 2012................................................................... 35

F. The selling of state-sponsored secrets via the fraudulent website by and through mainstream corporations in January 2012.......................... 35

    1. Antonio Gutierrez and Brittney O'Brien's locating, hacking, pirating, selling and dissemination of the state-sponsored fraudulent website to commercial corporate entities in the tech and entertainment sector and the sophisticated network of additional censorship, suppression, and corporate intimidation efforts between Gutierrez, O'Brien, and Corporate Defendants.................................................................... 37

    2. The extreme censorship, isolation, and dictatorship solely targeted against Plaintiff explained in detail........................................... 39

G. The aiding and abetting of O'Brien to Gutierrez from the years 2009-2012 in the commitment and conspiracy to the hacking, selling and dissemination of the state-sponsored fraudulent website.......................................... 42

    1. Introduction to the sexual exploitation and sex trafficking of Plaintiff and all her former intimate relationships and sexual partners................. 43

    2. The suppression of news reporting by the global media news outlets due to the extreme corporate intimidation campaign and active heinous acts against humanity occurring in real time and on the Internet.............. 44

    3. The overthrowing of the Federal and State Government by and through the extreme corporate intimidation campaign, transnational terrorism, dictatorship, and unprecedented virtual global insurrection.............. 45

H. The public advertisement of state-sponsored technology for sale in the form of child pornography, profanity, obscenities, gender-based violence, and violence against the LGBTQ+ community............................................ 46

    1. The fraudulent business model of the Paying John Does and/or Renters of the fraudulent cell phone applications and the Freeloading Does and/or

Permissive Users (the "Rogue Army") of the fraudulent website…..... **49**

2.  Dropbox's role in the conspiracy to aid and abet the transnational repressive virtual sex trafficking network with their willful fraudulent distribution of child pornography, gender-based violence, and LGBTQ+ violence by and through their file sharing cloud services ……………. **52**

3.  The four fraudulent cell phone applications being sold on the Apple App Store and Google Play Store and the product of the fraudulent website being sold to DirecTV, AT&T, and numerous other Telecom Doe Defendants, as four fraudulent on-demand adult entertainment channels………....…………………………………………………....... **55**

4.  The motives of the combined corporate powers and dictatorship by and through its sophisticated network of corporate intimidation and transnational repression…................................................................……… **57**

I.  The conspiracy and aiding and abetting to organize and commit transnational terrorism and form a repressive authoritative network by and through said Corporate Defendants, inclusive………...………………………………….. **58**

J.  Plaintiff socially engages with O'Brien and Gutierrez in Las Vegas, Nevada in April 2012………………………………………………………...……….. **60**

K.  Plaintiff socially engages with O'Brien and Gutierrez for the second (and last) time in the Coachella Valley, California in April 2014…………...……….. **63**

1.  Plaintiff confirms that O'Brien and Gutierrez are responsible for the hacking, distribution, and selling of the state-sponsored fraudulent website and its extended for-sale corporate sector fraudulent interactive services……………………….....………………………....……….. **67**

L.  Descriptions and detail of the four fraudulent cell phone applications each available for monthly subscription fees by and through corporate Defendants and corporate Doe Defendants …………....………………………….....…. **70**

M. Descriptions of the publicly available fraudulent website and its extended fraudulent interactive computer services on the Internet by and through the sex trafficking of Plaintiff and all her former intimate relationships and sexual partners to the general public……………………………………..…..... **80**

N. The motives of Gutierrez and O'Brien by and through corporate intimidation, transnational terrorism, and their implementation of an authoritative repressive corporate network...................................................... **91**

O. Plaintiff becomes aware of the four fraudulent cell phone applications and mirrored "Athena Reddersen" fraudulent On-Demand adult entertainment channels in April 2014............................................................. **93**

P. Descriptions of Plaintiff's extreme suffering, damages, and isolated/segregated life experiences from being sold and sex trafficked as adult entertainment by and through the Internet, corporate America, and pirated state-sponsored technology assets, since January 2012................... **94**

Q. The State of California, F.B.I., D.O.J., and United States of America's gross negligence, omissions, and/or wrongful act of the normalization, desensitization, and weaponization of the unregulated Big Tech, Telecom, and Banking sector................................................................... **104**

R. Plaintiff initiates reporting of said organized criminal activity, conspiracies, and Civil Rights violations to State authorities, Federal authorities, and Corporate Defendants............................................................ **104**

S. Plaintiff's systemic sufferings by and through the gross negligence, omissions, and/or wrongful acts of the State of California, F.B.I., D.O.J., and United States of America.................................................................. **117**

**VI.    CAUSES OF ACTION**............................................................... **122**

COUNT 1: VIOLATION OF THE FIRST AMENDMENT OF THE BILL OF RIGHTS................................................................................. **121**

COUNT 2: VIOLATION OF THE FOURTH AMENDMENT OF THE BILL OF RIGHTS................................................................................. **128**

COUNT 3: VIOLATION OF THE FIFTH AMENDMENT OF THE BILL OF RIGHTS................................................................................. **135**

COUNT 4: VIOLATION OF THE THIRTEENTH AMENDMENT OF THE U.S. CONSTITUTION.......................................................................... **142**

COUNT 5: VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION..............................................................................……........ 149

COUNT 6: VIOLATION OF THE JUSTICE AGAINST SPONSORS OF TERRORISM ACT…..….…… ….......................................................……..…… 154

COUNT 7: VIOLATION OF 18 U.S.C. § 38, FRAUD INVOLVING AIRCRAFT OR SPACE VEHICLE PARTS IN INTERSTATE OR FOREIGN COMMERCE... 205

COUNT 8: VIOLATION OF 18 U.S.C. § 1962(c), (THE 'ATHENA REDDERSEN' SEX TRAFFICKING ENTERPRISES) ……………….................………..…… 210

COUNT 9: VIOLATION OF 18 U.S.C. § 1962(d) BY CONSPIRING TO VIOLATE 18 U.S.C. § 1962(c) …………………….………...................……………… 218

COUNT 10: OBSTRUCTION...........................................................….....…... 220

COUNT 11: VIOLATION OF 18 U.S.C. §§ 1581, et seq., PEONAGE, SLAVERY, AND TRAFFICKING IN PERSONS …………………..….……………..….…...… 224

COUNT 12: VIOLATION OF THE FIGHT ONLINE SEX TRAFFICKING ACT AND STOP ENABLING SEX TRAFFICKERS ACT ……………................…… 231

COUNT 13: VIOLATION OF THE STOP ADVERTISING VICTIMS OF EXPLOITATION ACT OF 2015 ……....……………….………..…….....…..…… 239

COUNT 14: VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1114, THE LANHAM ACT, FALSE ADVERTISING …….……………….….............….…... 245

COUNT 15: VIOLATION OF 15 U.S.C. § 1125(d), THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT….....….....…........ 250

COUNT 16: VIOLATION OF 18 U.S.C. § 1030, THE COMPUTER FRAUD AND ABUSE ACT…….…………………....………...........................…...….…… 255

COUNT 17: VIOLATION OF 15 U.S.C. § 8131, CYBERPIRACY PROTECTIONS……….…………….……….…...................................…..….…… 259

COUNT 18: VIOLATION OF CAL. CIV. CODE § 52.7, SUBCUTANEOUS IMPLANTING OF IDENTIFICATION DEVICE……………………..…....…… 264

COUNT 19: VIOLATION OF CAL. HEALTH & SAFETY CODE § 24176,
PERFORMANCE OF EXPERIMENT WITHOUT CONSENT............…...…… **270**

COUNT 20: VIOLATION OF CALIFORNIA CONSTITUTION ARTICLE 1,
SECTION 1 - INALIENABLE RIGHTS ……………….….....……………… **277**

COUNT 21: VIOLATION OF CAL. CIV. CODE § 1708.8, PHYSICAL INVASION
OF PRIVACY ……………………………………………………………… **284**

COUNT 22: VIOLATION OF CAL. CIV. CODE § 52.5, CIVIL ACTION FOR
VICTIMS OF HUMAN TRAFFICKING………………….….…………….… **290**

COUNT 23: VIOLATION OF CAL. CIV. CODE § 51.9, SEXUAL
HARASSMENT……………………….…….………………………….......… **295**

COUNT 24: VIOLATION OF THE RALPH CIVIL RIGHTS ACT OF 1976...… **300**

COUNT 25: VIOLATION OF THE TOM BANE CIVIL RIGHTS ACT……….... **303**

COUNT 26: VIOLATION OF CAL. PENAL CODE § 502, CALIFORNIA'S
COMPUTER CRIME LAW ………………………………………………… **306**

COUNT 27: VIOLATION OF CAL. BUS. & PROF. CODE §§ 17500, *et seq.,*
CALIFORNIA'S FALSE ADVERTISING LAW ………………….….…..… **310**

COUNT 28: COMMON COUNTS, ASSUMPSIT, AND UNJUST
ENRICHMENT/RESTITUTION ……………………………………………… **315**

COUNT 29: COMMON LAW TRADEMARK INFRINGEMENT …………….. **319**

COUNT 30: COMMON LAW CONVERSION ………………………….......... **323**

COUNT 31: DISPARGEMENT - TRADE LIBEL …………...…….........…..… **327**

COUNT 32: FRAUD - CONCEALMENT (COUNT 1)…………………….…..… **331**

COUNT 33:  FRAUD - CONCEALMENT (COUNT 2)…………….......…….....… **334**

COUNT 34: FRAUD - INTENTIONAL MISREPRESENTATION (COUNT 3).. **338**

COUNT 35: FRAUD - INTENTIONAL MISREPRESENTATION AND DECEIT
(COUNT 4)…………………………………...…...………………………… **343**

COUNT 36: CONSPIRACY AND INTENTIONAL MISREPRESENTATION
(COUNT 5) …………………………………………………........…........ **348**

- vi -

COUNT 37: AIDING AND ABETTING (COUNT 1) ..................................... **353**

COUNT 38: AIDING AND ABETTING (COUNT 2) ….....…….........….... **356**

COUNT 39: AIDING AND ABETTING (COUNT 3) ..................................... **360**

COUNT 40: AIDING AND ABETTING (COUNT 4) ….......…..…...........…. **365**

COUNT 41: AIDING AND ABETTING (COUNT 5) ..................................... **370**

COUNT 42: AIDING AND ABETTING (COUNT 6) ….......…..…...........…. **375**

COUNT 43: BREACH OF CONTRACT ................................................ **381**

COUNT 44: AGGRAVATED ASSAULT AND BATTERY (COUNT 1) ..….... **384**

COUNT 45: AGGRAVATED ASSAULT (COUNT 2) ................................. **387**

COUNT 46: FALSE IMPRISONMENT – HUMAN TRAFFICKING … ......... **391**

COUNT 47: TRESPASS TO CHATTEL ..................................…........ **397**

COUNT 48: VIOLATION OF CAL. CIV. CODE § 1708.7, STALKING .......... **402**

COUNT 49: INVASION OF PRIVACY – INTRUSION; MISAPPROPRIATTION
   OF LIKENESS AND IDENTITY; PUBLIC DISCLOSURE OF PRIVATE
   FACTS; FALSE LIGHT; AND CALIFORNIA CONSTITUTIONAL RIGHT TO
   PRIVACY...............................................................….............…….... **408**

COUNT 50: DEFAMATION – LIBEL AND SLANDER (COUNT 1) ….…......…. **412**

COUNT 51: DEFAMATION – LIBEL AND SLANDER (COUNT 2)............... **418**

COUNT 52: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS....... **426**

COUNT 53: PUBLIC NUISANCE.............................................................. **431**

COUNT 54: STRICT LIABILITY – ABNORMALLY DANGEROUS
   ACTIVITIES.......................................................................…....... **436**

PRAYER FOR RELIEF.............................................................…....... **441**

EXHIBITS A – Y...................................................…........ **Bates 000001-000177**

PROOF OF SERVICE...............................................................**443**

COMES NOW, Plaintiff, ATHENA REDDERSEN, individually (hereinafter "PLAINTIFF"), for Causes of Action against Defendants UNITED STATES OF AMERICA (hereinafter "DEFENDANT UNITED STATES"); UNITED STATES DEPARTMENT OF JUSTICE (hereinafter, "DEFENDANT U.S. DEPT. OF JUSTICE"); THE FEDERAL BUREAU OF INVESTIGATION (hereinafter, "DEFENDANT FBI"); THE STATE OF CALIFORNIA (hereinafter, "DEFENDANT CALIFORNIA"); THE CALIFORNIA DEPARTMENT OF JUSTICE (hereinafter, "DEFENDANT CA DEPT. OF JUSTICE"); APPLE, INC. (hereinafter, "DEFENDANT APPLE" and/or "DEFENDANT APPLE's APP STORE"); GOOGLE, LLC (hereinafter, "DEFENDANT GOOGLE" and/or "DEFENDANT GOOGLE's PLAY STORE"); GOOGLE INTERNATIONAL, LLC (hereinafter "DEFENDANT GOOGLE INTERNATIONAL"); ALPHABET, INC. (hereinafter, "DEFENDANT ALPHABET"); DROPBOX, INC. (hereinafter "DEFENDANT DROPBOX"); THE DIRECTV GROUP, INC. (hereinafter "DEFENDANT DIRECTV"); DIRECTV INTERNATIONAL, INC. (hereinafter "DEFENDANT DIRECTV INTERNATIONAL"); AT&T CORP., (hereinafter "AT&T"); AT&T SERVICES, INC. (hereinafter "DEFENDANT AT&T SERVICES"); JUAN CARLOS REDDERSEN (hereinafter "DEFENDANT J.C. REDDERSEN"); MAYITH DAYANA REDDERSEN (hereinafter "DEFENDANT M.D. REDDERSEN"); ANTONIO MARCO GUTIERREZ, (hereinafter "DEFENDANT GUTIERREZ"); BRITTNEY O'BRIEN, (hereinafter "DEFENDANT O'BRIEN"); and DOES 1 to 10, inclusive, (collectively hereinafter "DOE DEFENDANTS"); and each of them, complains and alleges as follows:

## **GENERAL ALLEGATIONS**

## **THE PARTIES**

1.      Plaintiff ATHENA REDDERSEN (hereinafter "PLAINTIFF") is, and at all relevant times herein has been, a citizen of the United States and a resident of Newport

5

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

Beach, California. As set forth fully below, PLAINTIFF is a victim of a transnational sex trafficking ring and repressive corporate network taking effect by and through a sophisticated technology, intimidation, and a corporate systemic censorship network centered around suppression and oppression, during the time period of January 2012 to the present. Plaintiff has suffered emotional, mental, psychological, and physical distress, and was and continues to be unprecedentedly injured in her property, business, personhood, health, and livelihood as a result of Defendants', and each of them, reckless conduct, omissions, and gross negligence.

2.     Defendant THE UNITED STATES OF AMERICA (hereinafter "DEFENDANT UNITED STATES"), is and at all relevant times herein has been a federal entity.

3.     Defendant THE UNITED STATES DEPARTMENT OF JUSTICE (hereinafter "DEFENDANT U.S. DEPT. OF JUSTICE"), is and at all relevant times herein has been a federal entity located within the District of Columbia.

4.     Defendant THE FEDERAL BUREAU OF INVESTIGATION (hereinafter, "DEFENDANT FBI") is and at all relevant times herein has been a federal entity located within the District of Columbia.

5.     Defendant THE STATE OF CALIFORNIA (hereinafter "DEFENDANT CALIFORNIA"), is and at all relevant times herein has been a state entity located within the County of Sacramento, California.

6.     Defendant THE CALIFORNIA DEPARTMENT OF JUSTICE (hereinafter "DEFENDANT CA DEPT. OF JUSTICE"), is and at all relevant times herein has been a state entity located within the County of Sacramento, California.

7.     Defendant APPLE INC. d/b/a THE APPLE APP STORE, (hereinafter "DEFENDANT APPLE" or "DEFENDANT APPLE's APP STORE") is, and at all relevant times herein has been, a corporation, incorporated in the State of California, doing business at 1 Apple Park Way, Cupertino, in the County of Santa Clara, State of California.   The California Secretary of State website information for DEFENDANT

APPLE is attached hereto as **Exhibit "A"** and incorporated by reference as if fully set forth herein.  On the California Secretary of State website, APPLE, INC. lists CT Corporation System as Agent for Service of Process, with an address of 330 North Brand Blvd., Ste. 700, Glendale, in the County of Los Angeles, State of California 91203. Apple Inc. is a corporation in the big tech sector that provides various types of products and services such as the popular Iphone; Macbook; Ipad; Safari web browser, and wearable accessories, etc. Apple Inc. is also a registered trademark for the App Store. The Apple App Store, "allows customers to discover and download applications and digital content, such as books, music, video, games, and podcasts."

8.      Defendant GOOGLE, LLC (hereinafter "DEFENDANT GOOGLE" or "DEFENDANT GOOGLE's PLAY STORE") is, and at all relevant times herein has been, a corporation, incorporated in the State of Delaware, doing business at 1600 Amphitheatre Pkwy, Mountain View, in the County of Santa Clara, State of California.  The California Secretary of State website information for DEFENDANT GOOGLE is attached hereto as **Exhibit "B"** and incorporated by reference as if fully set forth herein.  On the California Secretary of State website, GOOGLE, LLC lists CSC LAWYERS as Agent for Service of Process, with an address of 2710 Gateway Oaks Drive, Ste. 150N, Sacramento, in the County of Sacramento, State of California 95833. Google, LLC is a corporation in the big tech sector that provides various types of products and broadband services such as the Google Chrome web browser; Fiber Internet; Android OS cell phones; Chromebook laptops and is also a registered trademark for the Google Play Store. The Google Play Store offers a "premier global marketplace to distribute and enjoy innovative apps and games."

9.      Defendant GOOGLE INTERNATIONAL, LLC (hereinafter "DEFENDANT GOOGLE INTERNATIONAL") is, and at all relevant times herein has been, a corporation, incorporated in the State of Delaware, doing business at 1600 Amphitheatre Pkwy, Mountain View, in the County of Santa Clara, State of California.  The California Secretary of State website information for DEFENDANT GOOGLE INTERNATIONAL

PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES

is attached hereto as **Exhibit "C"** and incorporated by reference as if fully set forth herein. On the California Secretary of State website, GOOGLE INTERNATIONAL, LLC lists CSC LAWYERS as Agent for Service of Process, with an address of 2710 Gateway Oaks Drive, Ste. 150N, Sacramento, in the County of Sacramento, State of California 95833. Google, LLC is the parent company for Google International, LLC.

10.     Defendant ALPHABET, INC., (hereinafter "DEFENDANT ALPHABET") is, and at all relevant times herein has been, a corporation, incorporated in the State of Delaware, doing business at 1600 Amphitheatre Pkwy, Mountain View, in the County of Santa Clara, State of California.  The California Secretary of State website information for DEFENDANT ALPHABET is attached hereto as **Exhibit "D"** and incorporated by reference as if fully set forth herein.  On the California Secretary of State website, ALPHABET, INC. lists CSC LAWYERS as Agent for Service of Process, with an address of 2710 Gateway Oaks Drive, Ste. 150N, Sacramento, in the County of Sacramento, State of California 95833. Alphabet Inc. is the parent company of all Google entities.

11.     Defendant DROPBOX, INC., (hereinafter "DEFENDANT DROPBOX") is, and at all relevant times herein has been, a corporation, incorporated in the State of Delaware, doing business at 1800 Owens Street, Suite 200, San Francisco, in the County of San Francisco, State of California.   The California Secretary of State website information for DEFENDANT DROPBOX is attached hereto as **Exhibit "E"** and incorporated by reference as if fully set forth herein.  On the California Secretary of State website, DROPBOX, INC. lists CSC LAWYERS as Agent for Service of Process, with an address of 2710 Gateway Oaks Drive, Ste. 150N, Sacramento, in the County of Sacramento, State of California 95833. Dropbox is a "web-based file hosting services that uses 'cloud' storage to enable users to store and share files with others across the internet using file synchronization."

12.     Defendant THE DIRECTV GROUP, INC., (hereinafter "DEFENDANT DIRECTV") is, and at all relevant times herein has been, a corporation, incorporated in the State of Delaware, doing business at 2260 East Imperial Highway, El Segundo, California

PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES

92045.   The California Secretary of State website information for DEFENDANT DIRECTV is attached hereto as **Exhibit "F"** and incorporated by reference as if fully set forth herein.  On the California Secretary of State website, THE DIRECTV GROUP, INC. lists C T CORPORATION SYSTEM as Agent for Service of Process, with an address of 330 North Brand Blvd., Glendale, in the County of Los Angeles, State of California 91203. DirecTV is an "American multichannel video programming distributor based in El Segundo, California. It also provides traditional linear television service delivered by IP through its U-verse TV brand and Virtual MVPD service through its DirecTV Stream brand."

13.   Defendant   DIRECTV   INTERNATIONAL,   INC.,   (hereinafter "DEFENDANT DIRECTV INTERNATIONAL") is, and at all relevant times herein has been, a corporation, incorporated in the State of Delaware, doing business at 2260 East Imperial Highway, El Segundo, California 92045. The California Secretary of State website information for DEFENDANT DIRECTV INTERNATIONAL is attached hereto as **Exhibit "G"** and incorporated by reference as if fully set forth herein.  On the California Secretary of State website, DIRECTV INTERNATIONAL lists C T CORPORATION SYSTEM as Agent for Service of Process, with an address of 330 North Brand Blvd., Glendale, in the County of Los Angeles, State of California 91203. DirecTV International is an "organization that primarily operates in the Cable and other Pay Television Services business / industry within the Communications sector."

14.   Defendant AT&T CORP. (hereinafter "AT&T") is, and at all relevant times herein has been, a corporation, incorporated in the State of New York, doing business at of One AT&T Way, Bedminster, in the County of Somerset, State of New Jersey 07921. The California Secretary of State website information for DEFENDANT AT&T is attached hereto as **Exhibit "H"** and incorporated by reference as if fully set forth herein.  On the California Secretary of State website, AT&T lists C T CORPORATION SYSTEM as Agent for Service of Process, with an address of 330 North Brand Blvd., Glendale, in the County of Los Angeles, State of California 91203. AT&T is a "subsidiary of AT&T Inc.

PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES

1  that provides voice, video, data, and Internet telecommunications and professional services
2  to businesses, consumers, and government agencies."

3      15.    Defendant AT&T SERVICES, INC., (hereinafter "DEFENDANT AT&T
4  SERVICES") is, and at all relevant times herein has been, a corporation, incorporated in
5  the State of Delaware, doing business at 208 S. Akard St., Dallas, in the County of Dallas,
6  State of Texas. The California Secretary of State website information for DEFENDANT
7  AT&T SERVICES is attached hereto as **Exhibit "I"** and incorporated by reference as if
8  fully set forth herein. On the California Secretary of State website, AT&T SERVICES
9  lists C T CORPORATION SYSTEM as Agent for Service of Process, with an address of
10  330 North Brand Blvd., Glendale, in the County of Los Angeles, State of California
11  91203. AT&T Services, "provides telecommunication services, offers a wireless network,
12  cell phone, digital television, Internet, land line telecommunication services, and serves
13  customers worldwide."

14      16.    Defendant JUAN CARLOS REDDERSEN (hereinafter "DEFENDANT J.C.
15  REDDERSEN") is, and at all relevant times herein has been, an individual residing at
16  14534 Clydesdale Trl., in the city of San Antonio, county of Bexar, State of Texas.

17      17.    Defendant MAYITH DAYANA REDDERSEN (hereinafter "DEFENDANT
18  M.D. REDDERSEN") is, and at all relevant times herein has been, an individual residing
19  at 14534 Clydesdale Trl., in the city of San Antonio, county of Bexar, State of Texas.

20      18.    Defendant ANTONIO MARCO GUTIERREZ, (hereinafter "DEFENDANT
21  GUTIERREZ") is, and at all relevant times herein has been, an individual residing and
22  fraudulently, unlawfully, and illegally doing business as "Athena Reddersen" in the State
23  of California, in the United States of America, and Internationally. Plaintiff is unsure of his
24  current address; however, his last known address is 1154 Sixth Street, in the city of
25  Redlands, county of San Bernardino, State of California.

26      19.    Defendant BRITTNEY O'BRIEN, (hereinafter "DEFENDANT O'BRIEN")
27  is, and at all relevant times herein has been, an individual residing at 1416 Kayann Pl., in
28  the city of South El Monte, county of Los Angeles, State of California.

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

20.     PLAINTIFF is informed and believes and based thereon, alleges that at all times relevant herein, each DEFENDANT named as DOES 1 to 10, was a corporation, partnership, LLC, or individual doing business in the State of California, and may have an interest in Defendants APPLE; GOOGLE; DROPBOX; DIRECTV; and/or AT&T. PLAINTIFF is informed and believes and based thereon, alleges that at all times relevant herein, each DEFENDANT named as DOES 1 to 10, was a business entity of an unknown form, doing business in the State of California.

21.     PLAINTIFF is informed and believes and thereon alleges that there exists, and at all relevant times herein there existed, a unity of interest between DEFENDANTS and DOES 1 to 10, such that any individuality and separateness between DEFENDANTS and DOES 1 to 10, that each of them, *inter alia*, contributed to PLAINTIFF's damages by unprecedentedly exploiting and converting the location of PLAINTIFF's fraudulent cyber domain on the Internet and thereby limiting PLAINTIFF's access to her own personal property, privacy, Personal Information, and digital identity by and through systemic censorship and corporate intimidation, suppression, and oppression.

22.     Defendant DOES 1 to 10, inclusive, are sued herein as persons or entities. Their true names and capacities are presently unknown to PLAINTIFF.  When said true names and capacities are ascertained, PLAINTIFF will amend this Complaint by inserting such information.  PLAINTIFF is informed and believes and thereon alleges that each of the fictitiously named Defendant DOES 1 to 10 are responsible, in some manner for the occurrences alleged herein, and that PLAINTIFF's damages were proximately caused by said Defendants and DOES 1 to 10.

23.     PLAINTIFF is informed and believes and thereon alleges, that at all times relevant, each Defendant, including DOES 1 to 10, was the agent, servant, representative, and/or employee of each of the other DEFENDANTS, and that in doing the things hereinafter alleged, each DEFENDANT was fraudulently and unlawfully acting within the course and scope of his or her authority as such agent, servant, representative, and/or employee, with the permission, knowledge, understanding, consent, and ratification of

1   each of the other DEFENDANTS.  Unless otherwise indicated, all DEFENDANTS are
2   collectively referred to herein as "DEFENDANTS."

### JURISDICTION

5     24.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331,
6   because this action arises under the Constitution, laws, or treaties of the United States, and
7   18 U.S.C. § 1964(c), because this action alleges violations of the Racketeer Influenced
8   Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

9     25.    This Court has subject matter jurisdiction over this action pursuant to 28
10   U.S.C.  § 1346 because this is an action for personal injury or death caused by the
11   negligent or wrongful act or omission of an employee of the federal government,
12   Defendants UNITED STATES; U.S. DEPT. OF JUSTICE; and the FBI.

13     26.    This Court has subject matter jurisdiction over this action pursuant to 28
14   U.S.C. § 1343 because this is an action for Civil Rights, wherein all Defendants are
15   depriving the Plaintiff of both Constitutional rights, privileges, and equal protections, as
16   mentioned in to 28 U.S.C. § 1343(a)(3).

17     27.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to
18   adjudicate PLAINTIFF's claims arising under the laws of the State of California, including
19   those involving the joinder or intervention of additional parties, because such claims
20   involve a common nucleus of operative facts so related to claims in action within such
21   original jurisdiction that they form part of the same case or controversy under Article III of
22   the United States Constitution.

23     28.    This Court has diversity jurisdiction over PLAINTIFF's claims herein
24   pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00 and
25   Defendants Juan Carlos Reddersen ("J.C. REDDERSEN") and Mayith Dayana Reddersen
26   ("M.D. REDDERSEN") are citizens of different States and reside in the State of Texas,
27   therefore, diversity of citizenship exists, pursuant to 28 U.S.C. § 1332 (a)(1).

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

29.     PLAINTIFF's timely California Tort Claims Act ("CTCA") claim for damages was denied by Defendants California and the California Department of Justice, on June 30, 2023.

30.     PLAINTIFF's timely Federal Tort Claims Act ("FTCA") claim for damages was denied by Defendants United States of America, the United States Department of Justice, and the Federal Bureau of Investigations ("FBI"), on November 15, 2023.

## VENUE

31.     Venue is proper under 28 U.S.C. § 1402 because at all times relevant, Plaintiff resided in this district and the wrongful acts and/or omissions complained of occurred in this judicial district. Additionally, venue is proper under 28 U.S.C. § 1402(a)(1)(b) because this is an action for personal injury or death caused by the negligent or wrongful act or omission of an employee/agency of the federal government.

32.     Venue is proper under 28 U.S.C. § 1391(b)(2) because, *inter alia*, substantial parts of the events or omissions giving rise to the claim occurred in the District and/or a substantial part of property that is the subject of the action is situated in the District.

33.     Venue is proper under 18 U.S.C. § 2334(a) because at all times relevant, Plaintiff resided in this district and was injured in her personhood, property, and/or business by reason of an unprecedented act of international terrorism, in a civil action pursuant to 18 U.S.C. § 2333.

## FACTUAL ALLEGATIONS

34.     On, or around the year 1993, DEFENDANT J.C. REDDERSEN sued PLAINTIFF's mother, KELLY K. JOHNSON, over sharing child custody of then, 5-year-old PLAINTIFF. Prior to the year 1993, DEFENDANT J.C. REDDERSEN was involved in a domestic dispute with PLAINTIFF's mother over the care and visitation of PLAINTIFF. PLAINTIFF's mother had left the relationship with DEFENDANT J.C. REDDERSEN in and around the year 1989, due to domestic violence. After the separation

13

in and around 1989, DEFENDANT J.C. REDDERSEN moved to the State of Texas, where he pursued a career and education in aerospace engineering. DEFENDANT J.C. REDDERSEN and PLAINTIFF's mother never married. Shared joint custody was granted to DEFENDANT J.C. REDDERSEN by the Los Angeles Superior Court on November 30, 1993. Attached hereto is the Conciliation Court Agreement and Stipulated Order Re Custody and Parenting Plan, *see* **Exhibit "J"**. PLAINTIFF was born and raised in the County of Los Angeles, State of California, for the majority of her life, or from 1988 to 2012. DEFENDANT J.C. REDDERSEN still currently resides in the State of Texas. As of November 13, 2009, PLAINTIFF'S mother is deceased.

35.     During the years 1989 through December of 1996, and at all relevant times therein, DEFENDANT J.C. REDDERSEN educated himself and experimented with classified government and/or military aerospace engineering assets and technologies for his own personal gain, rogue purpose, and malicious intent by and through his at-the-time employer(s), as an aerospace engineer, in the State of Texas, or possibly in the State of Kansas via contract employment. Attached hereto is J.C. REDDERSEN's recent LinkedIn Resume, *see* **Exhibit "K"**.

36.     PLAINTIFF is aware, conscious, knows, and understands that the following allegations will and should be considered an unprecedented blowing of the whistle on DEFENDANT J.C. REDDERSEN's wrongful, deceitful, malicious, unsafe, fraudulent, unlawful, and illegal conduct against the United States Government by and through the deliberate taking of their classified technology assets and intellectual property, and using them for unauthorized and unprecedented rogue experimentation.

37.     PLAINTIFF is informed, believes, and thereon alleges that since and around 1996, at 32-years-old, DEFENDANT J.C. REDDERSEN has been and is currently defrauding the United States of America by stealing, converting, embezzling, pirating, and misappropriating classified technology assets, intellectual property ("IP"), and government trade secrets, such as hardware, software, and communication network/server, belonging to military defense aircraft parts, such as surveillance/combat drones and/or

14

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

surveillance/combat aircraft. More specifically, DEFENDANT J.C. REDDERSEN, at 32-years-old, was able to invent and discover by and through unlawful, illegal, immoral, inhumane, unprecedented, and unethical human experimentation, a dual technology, solar-powered GPS surveillance tracking and identification device (hereinafter referred to as, "State-Sponsored Solar Powered Tracking Device"). PLAINTIFF further alleges that the stolen, embezzled, pirated, and misappropriated military defense technology assets and subsequent unprecedented medical discovery has the accessibility and functions of all the same features it would typically have when installed in a surveillance/combat drone and/or surveillance/combat aircraft, such as high-definition surveillance satellite imaging technologies and black box audio surveillance capabilities, that are primarily used in military defense satellite communication systems and classified Spy Satellites, or Reconnaissance (RECON) Satellites.

38.     On, or about December 18, 1996, to December 25, 1996, DEFENDANT J.C. REDDERSEN, at 32-years-old, kidnapped, an at the time 8-year-old PLAINTIFF, by commercial flight, from the State of California to the State of Florida, City of Orlando, County of Orange. DEFENDANT J.C. REDDERSEN had premeditated and pre-planned the "surprise" Christmas vacation trip to Disney World, Orlando, Florida, for a then, 8-year-old PLAINTIFF, wherein DEFENDANT J.C. REDDERSEN specifically told PLAINTIFF not to tell her mother about the surprise Christmas vacation trip. PLAINTIFF's mother had no prior knowledge, nor had consented to DEFENDANT J.C. REDDERSEN taking PLAINTIFF out of the State of California for the week leading up to Christmas '96. Attached hereto are handwritten rough draft letters from PLAINTIFF's mother to J.C. REDDERSEN, *see* **Exhibit "L".** Furthermore, PLAINTIFF's mother was under the impression that the week leading up to Christmas '96 spent with her father would be local and within the State of California, as she had no other reason to believe otherwise.

39.     PLAINTIFF is aware, conscious, knows, and understands that the following allegations are unprecedented, hateful, sociopathic, narcissistic, out-of-the-norm and

socially unacceptable, but as mentioned above, the following allegations of DEFENDANT J.C. REDDERSEN are rooted in domestic violence, power, and control.

40.  DEFENDANT J.C. REDDERSEN had not only premeditated the kidnapping of PLAINTIFF out of the State of California but had also prearranged the subsequent fraudulent, unlawful, illegal, immoral, inhumane, and unethical medical operation that took place in Orlando, Florida. PLAINTIFF further alleges that a co-conspiring and cooperating neurosurgeon, or DOE DEFENDANT NO. 1, who was likely formally known to DEFENDANT J.C. REDDERSEN to some degree, had come to a mutual agreement and understanding with regard to the execution of the fraudulent and experimental medical/surgical operation, prior to DEFENDANT J.C. REDDERSEN's arrival with PLAINTIFF in the State of Florida.

41.  The involved Neurosurgeon Doe Defendant, or DOE DEFENDANT NO. 1's, identity remains unknown to PLAINTIFF, as does the name of the pediatric hospital facility, where the fraudulent and experimental medical operation was performed, due to DEFENDANT J.C. REDDERSEN intentionally drugging and subsequently blacking out, then 8-year-old PLAINTIFF, before and after the fraudulent and experimental medical operation took place, so that PLAINITIFF would not remember having the medical operation, nor would PLAINTIFF remember being in, or anywhere around a children's hospital in Orlando, Florida. PLAINTIFF further alleges that she does recall being at Disney World in the State of Florida in 1996 and further recalls how upset her mother was when she arrived back in the State of California on the afternoon of Christmas Day '96.

42.  PLAINTIFF is informed, believes, and thereon alleges that this unprecedented experimental medical conspiracy implicates that the Neurosurgeon Doe Defendant, or DOE DEFENDANT NO. 1, was willing to commit insurance fraud and/or operate "under the table" to proceed with the fraudulent experimental surgical operation, as a quid pro quo favor to DEFENDANT J.C. REDDERSEN. PLAINTIFF further alleges that the fraudulent and experimental operation was foreseeably too medically risky, and furthermore, the medical experiment was unprecedented, inhumane, unethical,

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

experimental, and involved defrauding the United States of America, and therefore, further imposing a national security risk by exposing classified trade secrets and military defense technology assets on an alleged publicly accessible cyber domain.

43.    In and around December of 1996, unbeknownst to PLAINTIFF's mother, DEFENDANT J.C. REDDERSEN had forced an unnecessary, fraudulent, unlawful, illegal, immoral, inhumane, and unethical medical operation, for non-medical reasons, in the City of Orlando, State of Florida, on then, 8-year-old PLAINTIFF, by fraudulently surgically implanting a State-Sponsored Solar Powered Tracking Device, that DEFENDANT J.C. REDDERSEN had stolen, converted, diverted, pirated, modified, and "invented" for the specific purpose of tracking, controlling, monitoring, spying, and stalking PLAINTIFF and her mother, KELLY K. JOHNSON (now deceased), in the privacy of their own home and by using the converted, pirated, and embezzled state-sponsored satellite technology assets; hardware, software, and communication network/server, that were previously misappropriated, pirated, and embezzled by and through DEFENDANT J.C. REDDERSEN's access through his at-the-time employer(s) in the mid-1990s. Additionally, the employer(s) (in and around the years 1989 throughout 1996) who allowed and permitted the Defendant the access to the classified state-sponsored technology assets mentioned above, is unknown to the PLAINTIFF. Moreover, PLAINTIFF is further aware, knowledgeable, and is informed that the Defendant has had an active past working on military defense projects and has been employed as an independent contractor in the field of aerospace and defense, including on solo projects.

44.    Plaintiff is informed, believes, and thereon alleges that DEFENDANT J.C. REDDERSEN's state-sponsored surveillance-over-PLAINTIFF "invention" was moreover and technically an **unprecedented and experimental medical discovery,** wherein the alleged "invention" was solely the activation of the merging of human biology with modern-day solar technology and/or electricity. Thus, the experimental medical discovery implies that the human biology of the brain, occipital lobe, eyeballs, retina, optic nerve, and natural bio-electric currents constantly generated within the body and human brain are

PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES

able to directly absorb sunlight rays through the PLAINTIFF's eyes, therein activating an unprecedented nuclear-like energy and/or solar electricity within the human body and by and through the interactive function of the surgically implanted State-Sponsored Solar Powered Tracking Device. Additionally, the unprecedented and experimental medical discovery allowed the merged State-Sponsored Solar Powered Tracking Device to grant indoor access into tracking, monitoring, and surveilling the PLAINTIFF in the privacy of her own home(s) and/or residence(s), and therefore fraudulently, unlawfully, illegally, immorally, non-consensually and unethically authorizing a type of futuristic "Cold War" spy technology and medical experiment through the PLAINTIFF's at the time, 8-year-old prepubescent body (circa 1996).

45.    Plaintiff is informed, believes, and thereon alleges that DEFENDANT J.C. REDDERSEN's unprecedented medical experimentation objective on the minor child and/or PLAINTIFF at the time, was partially executed to weaponize the PLAINTIFF against her mother in retaliation of their failed relationship.

46.    DEFENDANT J.C. REDDERSEN was able to monitor, control, spy, and stalk both PLAINTIFF and her mother, with the corresponding state-sponsored software and the communication network/server that he had converted, pirated, misappropriated, embezzled, and modified, which projected PLAINTIFF in real-time, high-definition satellite imagery with (black box) audio surveillance capabilities, similar to that as of the functions installed on a surveillance/combat drone and/or surveillance/combat aircraft, as mentioned above.

47.    DEFENDANT J.C. REDDERSEN then paired the stolen /embezzled /pirated /misappropriated state-sponsored software/network/server with the stolen /embezzled /pirated /misappropriated State-Sponsored Solar Powered Tracking Device and integrated it on a publicly accessible and searchable domain (.com) on the world wide web, in and around 1996, before the Internet became what it is today and before the founding of the search engine giant, Google. The name of the publicly accessible intrusive surveillance cyber domain, DEFENDANT J.C. REDDERSEN fraudulently developed for this pirated

PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES

"invention" of the State-Sponsored Solar Powered Tracking Device, is www.athenareddersen.com, (herein after referred to as, "FRAUDULENT WEBSITE").

48.    PLAINTIFF is informed, believes, and thereon alleges, that she is unaware, unfamiliar, and unknowledgeable of how DEFENDANT J.C. REDDERSEN was able to fraudulently register, title, and/or "name" the classified military technology assets stored on a classified network/server with a public domain (.com) Internet Protocol ("IP") address.

49.    PLAINTIFF is informed, believes, and thereon alleges, that the stolen military-grade satellite systems, software, network, and classified servers that DEFENDANT J.C. REDDERSEN used to create / heist / seize / pirate / develop / "invent" the intrusive surveillance domain of PLAINTIFF, as mentioned above, are being hosted and stored on a classified state-sponsored network /cloud and/or server, primarily used in either the United States Airforce and/or the Department of Defense, as the FRAUDULENT WEBSITE's state-sponsored cloud stored software's primary and sole function is enabled through military-grade and high-definition surveillance satellite communication systems, and/or RECON satellites, and as mentioned above, are typically used in RECON and/or combative objectives.

50.    PLAINTIFF is informed, believes, and thereon alleges DEFENDANT J.C. REDDERSEN had originally implemented and pre-programed censorship within the publicly accessible FRAUDULENT WEBSITE's state-sponsored surveillance cyber domain by and through the web layout coding, and/or Hyper Text Markup Language ("HTML"), to prevent PLAINTIFF's mother, and including the PLAINTIFF, from ever having access via a full name search, or "ATHENA REDDERSEN" on any web browser's search engine, as the Internet became a more dominant form of communication in the late 1990s and early 2000s.

51.    PLAINTIFF is informed, believes, and thereon alleges that by and through her own research and investigation, the FRAUDULENT WEBSITE was confirmed as a non-publicly registered website domain through an ICANN (https://www.icann.org/)

registry search in the years 2015, 2018, and 2020. PLAINTIFF further alleges that in the years 2015, 2018, and 2020, when she did a background investigation on the registrant for the FRAUDULENT WEBSITE, she did not trust the search results of "no results" as accurate from the ICANN registry lookup services, due to the extreme targeted and isolated censorship intentionally obstructing her from accessing anything in relation to the FRAUDULENT WEBSITE, including but not limited to search engine search results.

52.    Additionally, during this Spring of 2023, it was confirmed by an unidentified individual by and through an independent WHOIS (https://www.whois.com/) search, that the FRAUDULENT WEBSITE is in fact, not a publicly registered website and/or is no longer a publicly registered website and is yet still actively and currently functioning as a public (.com) and publicly accessible cyber domain. Attached hereto are printouts of ICANN and WHOIS domain registry searches for www.athenareddersen.com (and www.reddersenathena.com for comparison), *see* **Exhibit "M".** Therefore, PLAINTIFF further confirms and alleges that the "no results" independent search results, does in fact, confirm the alleged above claims, that the FRAUDULENT WEBSITE is currently being and/or could be currently stored on a classified cloud/network and server, as the active classified technology IP assets that were stolen, pirated, converted, diverted, and misappropriated by DEFENDANT J.C. REDDERSEN are initially meant for authorized military personnel use only and should not need a publicly registered (.com) domain to function and/or be actively in use.

53.    PLAINTIFF is informed, believes, and thereon alleges that PLAINTIFF has not been able to fully access publicly available search results for "ATHENA REDDERSEN" (and the hyper-sexualized search results, post 2012) on any web browser, or search engine, such as Google Chrome, Apple Safari, Microsoft Edge, Firefox, Brave, Onion Browser, etc., before and after the year 2012, as PLAINTIFF would always be "Google" searching herself since 2004, at 16-years-old, and several times, thereafter, leading up to 2012 and throughout the years, leading up to 2023. PLAINTIFF further alleges that, as of 2012, even when using a virtual private network ("VPN"), that she still

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

remains unconstitutionally censored and individually suppressed and isolated from accessing the publicly available search results for "ATHENA REDDERSEN." Also attached hereto as **Exhibit "M.2"** are screenshots of the PLAINTIFF's cyber domain search engine results with regard to the inaccurate results, intentionally deceitful misrepresentation, and suppressed, censored, and blocked content of the FRAUDULENT WEBSITE and its public dissemination of obscenities and profanities.

54.   PLAINTIFF further alleges that had PLAINTIFF not been censored by DEFENDANT J.C. REDDERSEN in accessing the FRAUDULENT WEBSITE, or in "Google" search results of "ATHENA REDDERSEN" prior to the year 2012, PLAINTIFF would have been able to find, locate, and access the publicly accessibly cyber domain of the FRAUDULENT WEBSITE before it was located, hacked, disseminated, and sold by domain thieves in January 2012.

55.   PLAINTIFF is informed, believes, and thereon alleges that DEFENDANT J.C. REDDERSEN did not secure the FRAUDULENT WEBSITE in 1996, with necessary firewalls and additional cyber security protections, as he left the FRAUDULENT WEBSITE wide open for potential domain thieves and hackers to penetrate and seize, further imposing additional national security risks to the United States of America.

56.   PLAINTIFF is informed, believes, and thereon alleges, that since and around the year 1996, DEFENDANT J.C. REDDERSEN willingly and knowingly put DEFENDANT UNITED STATES OF AMERICA at risk of a national security crisis by voluntarily and deliberately embezzling, misappropriating, stealing, pirating, converting, and diverting classified and state-sponsored intellectual property technology assets; hardware, software, and (military defense) communication network/server, and integrating and displaying the classified technology assets on a publicly accessible and searchable domain (.com) on the Internet for his own rogue, fraudulent, experimental, unethical, immoral, inhumane purpose, and malicious intent.

57.   PLAINTIFF is informed, believes, and thereon alleges, that this type of fraudulent, unlawful, illegal, immoral, inhumane, and unethical human experimentation

1  that DEFENDANT J.C. REDDERSEN had forcefully engaged, coerced, and forced upon

2  PLAINTIFF, was unprecedented and the first of its occurrence in 1996, as this kind of

3  heinous act against humanity had never been committed before, wherein, an experimental

4  solar-powered semiconductor chip, or State-Sponsored Solar Powered Tracking Device,

5  was fraudulently, unlawfully, illegally, immorally, inhumanely, and unethically implanted

6  inside a person's occipital bone and/or brain, let alone a minor child, at the tender age of 8

7  years of old.

8       58.   PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANT

9  J.C. REDDERSEN is not only an aerospace engineer, but an above-average physicist and

10  an unauthorized experimental (inhumane) researcher with electrical engineering and

11  nuclear science/energy knowledge and abilities. PLAINTIFF further alleges that

12  DEFENDANT J.C. REDDERSEN's diverse background as an aerospace engineer allowed

13  him to consider his inhumane experimental motives and see them through to the point of

14  execution, mirroring that of his personal Project Management career skills and experience

15  in the aerospace and defense field.

16       59.   Additionally, PLAINTIFF further alleges that DEFENDANT J.C.

17  REDDERSEN was inspired by the research already established by 18th-century scientists

18  and physicists, Luigi Galvani and Alessandro Volta, whose work both helped to contribute

19  to the discovery and furtherance of the electric battery and electrophysiology,

20  'neuroelectric' theory, the electric origins of neuroscience, biological electricity, and/or

21  "animal electricity." Attached hereto are scientific medical elaborations and articles by the

22  University of Maryland titled, How the Human Body Uses Electricity, by Knowing

23  Neurons, a non-profit organization (with a focus on neuroscience education) titled, Brain

24  Battery, and a scientific journal on the history and background of the scientific dispute

25  between Galvani and Volta by the American Physical Society (APS) titled, March 20,

26  1800: Volta describes the Electric Battery, see **Exhibit "N".** Therefore, DEFENDANT

27  J.C. REDDERSEN's alleged medical discovery was and is merely an affirmation of the

28  studies and discoveries already invented by 18th-century scientists. But for this already

established scientific research, the Defendant would not have had the confidence, nor inspiration to see this unprecedented medical experiment through. Also attached hereto as **Exhibit "N"** is a science experiment Defendant J.C. Reddersen funded, in and around the year 2016, with regard to applying the snapping shrimp's hunting ability to quantify the energy released from its cavitation bubbles, and study the resulting shock waves and sonoluminescence, in order to design a device that uses cavitation to heat and purify water. In both, the above referenced science experiment, and Defendant J.C. REDDERSEN's rogue medical experimentation on PLAINTIFF, biology is the key and primary factor in producing said energy, such as heat and light. Therefore, further affirming the Defendant's fascination, curiosity, and intrigue for biological scientific research and the interest in combining it with modern day engineering applications and techniques.

60.    PLAINTIFF is informed, believes, and thereon alleges that DEFENDANT J.C. REDDERSEN sought out and had knowledge-based research of the implications of a solar-powered semiconductor chip, or State-Sponsored Solar Powered Tracking Device, being able to apply the power of the sun directly through the human pupils /eyeballs /retina of the optic nerve and straight into the brain and occipital lobe, with the application of the human brain and its ion channels generating a natural chemical reaction, and in turn, conducting charged neurons, creating an electrical current in the brain and becoming an automatic power generator and/or human "battery" working hand-in-hand with the power and light of the sun, in order to enact an unprecedented type and experimental biological nuclear-like "solar electricity." More specifically, this is done and made possible by and through the activation and exploitation of the classified trade secrets and military defense technology assets that were fraudulently, unlawfully, and illegally manipulated, pirated, and migrated on the alleged publicly accessible cyber domain, or FRAUDULENT WEBSITE, by the Defendant's bizarre, uncivilized, deceitful, atrocious, and cynical conduct and socially unacceptable behavior.

61.    PLAINTIFF is informed, believes, and thereon alleges that the initial layout of the FRAUDULENT WEBSITE, that DEFENDANT J.C. REDDERSEN fraudulently

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

manipulated and developed, was intended to function as an online "time machine," wherein the original organization of the website layout (before it was hacked in 2012) would be used to **solely** project and display a cloud-based "calendar archive" (Time /Date /Month /Year) of PLAINTIFF's private daily life events and personal experiences since the tender age of 8-years-old, or December 1996, when the State-Sponsored Solar Powered Tracking Device was unlawfully, illegally, immorally and unethically surgically implanted, and the medical discovery was "invented." Moreover, since the FRAUDULENT WEBSITE operates twenty-four hours a day and seven days a week (24/7) and is being stored on a state-sponsored network/cloud/server, in correspondence with the State-Sponsored Solar Powered Tracking Device and state-sponsored software, the PLAINTIFF's life was, and continues to be, put on public display via the Internet and the publicly accessible FRAUDULENT WEBSITE, further compromising PLAINTIFF and her Constitutional right to privacy and in an extreme, unprecedented, and authoritative fashion.  More specifically, not only does the general public have access to PLAINTIFF's past, and childhood, adolescence, and adult development via the cloud-based "calendar archive" of PLAINTIFF's private daily life events, stored on a state-sponsored network/cloud/server, but additionally, the public has access to monitor, surveil, spy and stalk PLAINTIFF in a real-time present-day broadcast on the Internet by and through the FRAUDULENT WEBSITE originally pirated, manipulated, and developed by DEFENDANT J.C. REDDERSEN.

62.    PLAINTIFF is informed, believes, and thereon alleges that the **initial** motive for DEFENDANT J.C. REDDERSEN's preposterous, atrocious, experimental, and inhumane behavior and conduct, were not only to implement biological control towards PLAINTIFF, but also to have the ability to be "present" in the PLAINTIFF's life and childhood development, as he no longer had immediate access to PLAINTIFF due to a failed long-term relationship with the PLAINTIFF's mother. Additionally, DEFENDANT J.C. REDDERSEN had also resided in the State of Texas, therefore, making it more difficult to raise, visit, and spend quality time with PLAINTIFF. PLAINTIFF further

PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES

alleges that due to the hostile nature of the separation between DEFENDANT J.C. REDDERSEN and PLAINTIFF's mother, the Defendant deliberately took the unprecedented medical risk and health hazard against PLAINTIFF in retaliation of the failed 10-year relationship between him and the PLAINTIFF's mother and therefore, punishing and weaponizing PLAINTIFF for his own faults, wrongdoings, and uncivilized conduct during the period of his relationship with PLAINTIFF's mother.

63.    PLAINTIFF is informed, believes, and thereon alleges that DEFENDANT J.C. REDDERSEN's **second** alternative motive for his preposterous, atrocious, experimental, and inhumane behavior and conduct against PLAINTIFF and PLAINTIFF's mother, were to see if his "idea" or "invention" /medical discovery, could, in fact, be fully executed in secret and under-the-table, by directly combining the human brain's biological electrical grid with modern-day solar technology/electricity. PLAINTIFF further alleges that DEFENDANT J.C. REDDERSEN specifically sought out PLAINTIFF's brain as the location destination of the experimental surgical implantation, because of the abundance of natural and organic bio-electric currents that live inside the human brain, further allowing the human eyeballs, retinas, and optic nerve to directly absorb solar rays and infrared radiation that are emitting from the sun's ultraviolet rays and atmosphere, therefore, activating its intended function as a solar powered-based surveillance system, with an unlimited energy supply that is naturally and organically imbedded within the biological function of the human body and human biology due to natural chemical reactions within the brain's biological function. Thus, an experimental surgical implant located elsewhere in the human body would be void, as the State-Sponsored Solar Powered Tracking Device would not be operational nor functional, if implanted elsewhere in the human body due to a lack of direct exposure to solar rays. Additionally, the human brain's natural neuro-electric currents being constantly biologically and chemically enhanced due to natural chemical reactions in the brain, function similar to that as of an electric battery and/or solar cell using direct current ("DC").

64.   Furthermore, PLAINTIFF is informed, believes, and thereon alleges that DEFENDANT J.C. REDDERSEN, who kidnapped and fraudulently, unlawfully, and illegally coerced and forced, then 8-year-old PLAINTIFF in 1996, to undergo an unethical experimental surgical procedure, for non-medical reasons, had zero absolute concern for the long-term physical health hazards and alarming implications that would be forever imposed towards PLAINTIFF, as DEFENDANT J.C. REDDERSEN had deliberately, willfully and knowingly compromised PLAINTIFF with no deliberate intentions of ever informing her, acknowledging its existence, and/or removing the State-Sponsored Solar Powered Tracking Device from the PLAINTIFF's body, as soon as she became a young adult, and/or became 18 years of age, in 2006. PLAINTIFF further alleges that the Defendant knew or should have known that his uncivilized, sinister, and experimental motive could cause the PLAINTIFF to develop a potential for disease, blindness, cancer, death, and/or an undiagnosable disease due to the unprecedentedness of the socially unacceptable medical and human experimentation he forced and imposed on PLAINTIFF at the tender age of 8-years-old.

65.   PLAINTIFF is informed, believes, and thereon alleges that, as a **third ulterior** motive, DEFENDANT J.C. REDDERSEN has been holding and continues to hold PLAINTIFF falsely imprisoned, hostage, and enslaved via the pirated, converted, misappropriated and embezzled diverted/developed/"invention" of the FRAUDULENT WEBSITE and/or the pirated classified network/cloud/server and State-Sponsored Solar Powered Tracking Device, wherein he displays PLAINTIFF surveilled in real time twenty-four hours a day and seven days a week (24/7) on the Internet and on the migrated and publicly accessible state-sponsored FRAUDULENT WEBSITE, in exchange for he and his wife, DEFENDANT M.D. REDDERSEN's, freedom as naturalized United States citizens. Both Defendants are defrauding the United States, and in furtherance of being able to control and dictate PLAINTIFF's future by and through targeted and isolated censorship and suppression, and more specifically, ever since the Defendant's FRAUDULENT WEBSITE was located and hacked by domain thieves in January 2012,

and subsequently sold and diverted into a pornographic and pedophilic transnational criminal enterprise by and through its commercial  corporate entities, or said Defendants, inclusive, and thus, the beginning of the sophisticated repressive corporate network, dictatorship, and the forced involvement, conspiracy, and entanglement of DEFENDANTS J.C. REDDERSEN and M.D. REDDERSEN into the repressive network.

66.    PLAINTIFF is informed, believes, and thereon alleges that DEFENDANT J.C. REDDERSEN and DEFENDANT M.D. REDDERSEN are consciously and deliberately engaging in transnational terrorism and conspiracy to commit transnational terrorism, with said Corporate Defendants, Individual Defendants, and Corporate and Individual Doe Defendants, inclusive, at the expense of the PLAINTIFF's physical, emotional, mental, and psychological health and wellbeing, her civil rights and liberties, and State and Federal Constitutional rights.

67.    In or around January 2012, when the FRAUDULENT WEBSITE was located, hacked, and sold to corporate entities, domestic and foreign, and due to the name, identity, likeness, persona, and personhood of PLAINTIFF being compromised and globally sex trafficked on the Internet, PLAINTIFF is informed, believes, and thereon alleges that receiving proper medical care and/or surgical removal of the State-Sponsored Solar Powered Tracking Device, that rightfully belongs to the United States government, has not been realistic nor achievable in this unprecedented and dystopian hostage-like situation, wherein PLAINTIFF is being confined, restrained, and prevented from her personal journey to seeking the pursuit of happiness, life's purpose, and sense of self-worth and identity, due to her identity being compromised on the Internet by and through a sophisticated and powerful repressive corporate network, wherein that factual allegation has a direct nexus to PLAINTIFF being compromised in reality as she goes about her daily life, and further seeks authorization from the United States government and the Court to be immediately medically released and/or relieved from such repressive and tyrannical transnational terrorist organization, as DEFENDANTS J.C. REDDERSEN; M.D. REDDERSEN;   GUTIERREZ;   O'BRIEN;   APPLE;   GOOGLE;   GOOGLE

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

INTERNATIONAL;     ALPHABET;     DROPBOX;     DIRECTV;     DIRECTV
INTERNATIONAL; AT&T; AT&T SERVICES and DOE DEFENDANTS, inclusive,
have been able to dictate the PLAINTIFF's life, since January 2012, by and through the
collective collusion of extreme and **unconstitutional censorship,** and the sophisticated
repressive network of corporate intimidation, suppression, and oppression that they have
collectively implemented against her, in furtherance of their illegal profiteering scheme
and virtual sex trafficking network/organization.

68.    PLAINTIFF is informed, believes, and thereon alleges that due to the
dystopian, uncivilized, and socially unacceptable conduct and the unprecedentedness of
the above mentioned allegations, the following claims have further several complex and
abstract components that have never before been interpreted in U.S. history, the law, nor
the United States Constitution, and therefore, lack the proper legal infrastructure and
protections in some areas, including but not limited to, the statute of limitations in each
cause of action set forthwith. Thus, the allegations of this entire civil action are meant to
unprecedentedly address capital Terrorism by the individual and/or PLAINTIFF being
directly victimized, displaced, and severely injured through the harmful conduct and
actions of the Defendants' collective collusion and implementation of a sophisticated
repressive network of corporate intimidation, censorship, and suppression. Additionally,
though this claim is brought in a United States Federal District Court, in a Civil action,
PLAINTIFF pleads to be exempted and/or tolled from the statute of limitations on the
grounds of the unprecedentedness and the addressing of a transnational terrorist
organization that are in continuous violations of the law each day; State, Federal,
Constitutional, Civil, and Criminal.

69.    Furthermore, said Corporate and Individual Defendants and Doe Defendants,
inclusive, are intentionally, knowingly, and deliberately obstructing, concealing, and
preventing the PLAINTIFF from accessing and/or obtaining the real (or tangible) evidence
and proof that remains publicly accessible by and through the Internet, Big Tech media
platforms, Telecom streaming services, the IRS, Financial Institutions, and independent

1  financial audits and/or digital content audits of above-mentioned DEFENDANTS
2  GUTIERREZ; APPLE; GOOGLE; DROPBOX; DIRECTV; AT&T SERVICES; and Doe
3  Defendants, inclusive, being purposely withheld, obstructed, destroyed, concealed, and
4  tampered with, in furtherance of sustaining their sophisticated repressive corporate
5  network and illegal profiteering scheme.  Therefore, PLAINTIFF pleads to be exempted
6  and/or tolled from the statute of limitations on the grounds of the unprecedentedness, the
7  corporate collusion, and the corporate obstruction, concealment, and the tampering of
8  evidence and witnesses, therefore preventing the PLAINTIFF from obtaining the real (or
9  tangible) evidence and leaving her with primarily circumstantial evidence, therein placing
10  a heavier burden of proof on the PLAINTIFF, further at odds with the facts and real
11  evidence that remains publicly available and accessible.

12      70.    PLAINTIFF is further informed, believes, and thereon alleges that, as the
13  publicly accessible FRAUDULENT WEBSITE is constantly being updated and revised by
14  hacker and perpetrator DEFENDANT GUTIERREZ and his fraudulent Doe
15  Customers/Permissive Users, the case matter and Complaint is ever evolving, and
16  discovery is always continuing. Therefore, as long as the FRAUDULENT WEBSITE and
17  sophisticated repressive corporate network remain intact and active on a daily basis, the
18  law continues to be violated on a daily basis, therefore, each cause of action in this
19  complaint is in continuous violation of the laws and the United States Constitution, and a
20  new and separate violation accrues daily. Thus, PLAINTIFF further seeks the exemption
21  and/or tolling of each cause of action's statute of limitations set forthwith in this
22  complaint.

23      71.    More specifically, PLAINTIFF further seeks the permitted exemption and/or
24  tolling from the statute of limitations pursuant to California Civil Code Section 52.5(c) that
25  states any civil action brought forth for damages to victims of human trafficking, "shall be
26  commenced within seven years of the date on which the trafficking victim was freed from
27  the trafficking situation." Therein indicating that each cause of action brought forth in this
28  unprecedented civil action is on the basis of the systemic and institutionalized slavery

being implemented by the repressive corporate network and the unprecedented virtual sex trafficking transnational enterprises of the PLAINTIFF by and through the FRAUDULENT WEBSITE and its extended for-sale corporate sector fraudulent interactive services. But for, the institutionalized repressive sex trafficking network, PLAINTIFF would not have any claims in this civil action to bring forth. Therefore, PLAINTIFF's claims have not yet started to commence, as she is still presently in the trafficking situation as alleged in this action.

72.    PLAINTIFF is informed, believes, and thereon alleges that she has exhausted her attempts at filing several criminal reports and complaints of terrorism with local, state, and federal authorities throughout the past decade (2014 to 2022), when she first became aware of the existence of the repressive corporate network in 2014, two (2) years after it was initially implemented in the year 2012. PLAINTIFF further alleges that because federal authorities, such as the cybercrimes division at the Federal Bureau of Investigations decided not to investigate her criminal complaints filed throughout the years with the Bureau, she has experienced severe social, educational, and financial disparities and extreme displacement in the United States of America. Additionally, living in isolation, segregated from society, and with the additional disparities and lack of resources, it took PLAINTIFF until this year, 2023, to bring legal action against the Defendants, and each of them. But for the inactions, lack of care, and lack of duty to investigate by the state and federal authorities of said alleged criminal and terrorist conduct referenced in this civil action, PLAINTIFF should have had her urgent claims and personal injuries addressed and resolved years ago. Thus, PLAINTIFF further seeks the exemption and/or tolling of each cause of action's statute of limitations set forthwith in this complaint.

73.    PLAINTIFF is further informed, believes, and thereon alleges that the unprecedented medical/surgical insertion of the State-Sponsored Solar Power Tracking Device forced upon PLAINTIFF, wherein DEFENDANT J.C. REDDERSEN had stolen, converted, pirated, and misappropriated, rightfully belongs to the United States

Government and/or the Department of Defense. PLAINTIFF further alleges that in order for the United States Government to take back control of their classified technology assets being illegally sold on the global market by and through said Corporate Defendants and Corporate Doe Defendants, inclusive, DEFENDANTS UNITED STATES will have to come to a consensus and assist the PLAINTIFF with the removal of the State-Sponsored Solar Power Tracking Device by and through an emergency Court Order and/or Injunctive relief, as this defense system exploitation and vulnerability is not only unprecedented but detrimental to the national security of the United States, as it is detrimental to the health, safety, and well-being of the PLAINTIFF. Therefore, PLAINTIFF will be seeking unprecedented injunctive relief for the prohibition of the unlawful and illegal taking and selling of the classified technology assets by said Corporate Defendants and Corporate Doe Defendants, inclusive, that rightfully belong to the United States, and further, emergency medical relief to prevent future physical harm against the PLAINTIFF, upon the confrontation and acknowledgement of the FRAUDULENT WEBSITE, its extended for-sale corporate-sector fraudulent interactive services, and the sophisticated repressive corporate network's existence, more specifically, once investigation is further pursued and examined of all participating perpetrators, corporations, and individuals, inclusive.

74.     PLAINTIFF is informed, believes, and thereon alleges that she is aware, conscious, understands, and wants to make clear that she knows she does not have standing to sue on behalf of the United States of America, for the taking of its classified technology assets and intellectual property. Moreover, there is an unprecedented issue of entanglement by and through DEFENDANT J.C. REDDERSEN's rogue medical experiment wherein he had the stolen classified technology assets surgically inserted into PLAINTIFF's body for human experimentation, as clarified above. Therefore, PLAINTIFF is further informed, believes, and thereon alleges that she has a legal right to have standing to sue on behalf of herself, her health, well-being, safety, and Constitutional right to privacy, and for the acknowledgment and the safe removal of the pirated classified technology assets, wherein both parties, the PLAINTIFF and DEFENDANT UNITED

1    STATES, remain vulnerable to exploitation by and through unprecedented and rogue
2    entanglement.

3         75.    PLAINTIFF is aware, conscious, knows, and understands that the following
4    allegations will and should be considered an unprecedented blowing of the whistle, <u>for the</u>
5    <u>second time,</u> on DEFENDANTS J.C. REDDERSEN; M.D. REDDERSEN; GUTIERREZ;
6    O'BRIEN; APPLE; GOOGLE; GOOGLE INTERNATIONAL; ALPHABET;
7    DROPBOX; DIRECTV; DIRECTV INTERNATIONAL; AT&T; AT&T SERVICES and
8    DOE DEFENDANTS', inclusive, and their collective collusion of the wrongful, deceitful,
9    malicious, atrocious, uncivilized, unsafe, misrepresentation, fraudulent, unlawful, and
10   illegal conduct against the United States Government and the PLAINTIFF by and through
11   the deliberate taking and selling of its classified technology assets and intellectual
12   property, and using them for unauthorized and unprecedented rogue entanglement, medical
13   experimentation, and social experimentation, and in furtherance of its global profiteering
14   scheme off the misrepresentation of PLAINTIFF's identity, persona, body, personal and
15   private life history, and former relationships, by and through  the United States' classified
16   technology assets, trade secrets, and intellectual property.

17        76.    PLAINTIFF is informed, believes, and thereon alleges that she is aware,
18   conscious, understands, and wants to make clear that though she is not legally employed
19   by DEFENDANTS APPLE; GOOGLE; DROPBOX; DIRECTV; AT&T; and DOE
20   DEFENDANTS, inclusive, PLAINTIFF is being forced and coerced,  to "work" for the
21   above referenced Corporate Defendants and Corporate Doe Defendants, inclusive, not only
22   as a fraudulent application developer, web developer, and/or adult film
23   producer/entertainer, but by and through involuntary servitude, forced labor, slavery, and
24   as a victim of sex trafficking. Therefore, PLAINTIFF is being compelled to "work" for
25   said corporate entities, in furtherance of its illegal profiteering scheme, while
26   simultaneously being sexually exploited, abused, violated, and taken advantage of by the
27   general public on the Internet by and through the free fraudulent interactive sex trafficking
28   computer services being provided by said corporate defendants, inclusive.

77.     Additionally, PLAINTIFF further alleges that by and through its repressive corporate network and dictatorship, above-referenced Defendants, are not only obstructing, preventing, and censoring the PLAINTIFF from accessing any real and/or tangible evidence by concealing its digital footprints on the PLAINTIFF's personal electronic devices, but are additionally actively witness and evidence tampering by and through its collusion of great intimidation of combined corporate powers, deregulation, and collective social suppression and oppression by the influence of its authoritarian corporate governance. Therefore, PLAINTIFF remains socially isolated, segregated, and displaced as an individual with no legal rights, no real evidence, and/or no witnesses willing to testify.

78.     PLAINTIFF, at age 23, became aware of the existence of DEFENDANT J.C. REDDERSEN's FRAUDULENT WEBSITE, by coming to an understanding that PLAINTIFF, herself, was being digitally surveilled by her father, DEFENDANT J.C. REDDERSEN, for the first time, in 2012, or 16 years after the initial implementation of the FRAUDULENT WEBSITE, in 1996. Furthermore, PLAINTIFF was informed of the FRAUDULENT WEBSITE's existence, however, did not conclude that the domain name was fraudulently "registered" /named and/or titled under her first and last name, until the year 2014. Moreover, since PLAINTIFF was intentionally censored, suppressed, and intentionally "kept out of the loop" in the details of the existence of this FRAUDULENT WEBSITE, it took PLAINTIFF years to put together the exact occurrences of terror that she was experiencing on the ground, in real time, in daily life, and to be able to connect the nexus to the highly sexually exploitive online /digital world PLAINTIFF was also living in, let alone be able to fully translate and diligently explain what exactly was going on, and had been going on, since January 2012.

79.     On, or about January 14, 2012, PLAINTIFF moved from Los Angeles, California to North Charleston, South Carolina with both DEFENDANT J.C. REDDERSEN, and his wife, DEFENDANT M.D. REDDERSEN (attached hereto is an e-mail exchange confirming the flight to the State of South Carolina, *see* **Exhibit "O"**), due

1    to PLAINTIFF losing her job in the State of California which resulted in her not being able
2    afford to pay life's necessities in the year 2011. PLAINTIFF alleges she was hesitant to
3    leave her life behind in the State of California for a new foreign town in the State of South
4    Carolina. Furthermore, PLAINTIFF was left with little to no choice, but to move to the
5    State of South Carolina, as DEFENDANTS J.C. REDDERSEN and M.D. REDDERSEN,
6    would only offer PLAINTIFF financial support if PLAINTIFF was to move in with them
7    at their North Charleston, South Carolina residence. Moreover, it was eventually agreed
8    upon by all parties in 2011, that PLAINTIFF could continue her education and find
9    employment in North Charleston, South Carolina, while living rent-free with
10   DEFENDANTS J.C. REDDERSEN and M.D. REDDERSEN.

11       80.    PLAINTIFF is informed, believes, and thereon alleges that following the
12   same week of PLAINTIFF's arrival in the State of South Carolina, on January 14, 2012, it
13   became clear to PLAINTIFF that DEFENDANTS J.C. REDDERSEN and M.D.
14   REDDERSEN had suddenly changed their behavior towards PLAINTIFF and were acting
15   erratically, out of character, and in secrecy, as if they were withholding important
16   information from PLAINTIFF during a time of dire crisis. PLAINTIFF further alleges that
17   the relationship between all parties immediately went awry, leaving PLAINTIFF confused
18   and intentionally uninformed during the first two weeks of PLAINTIFF's arrival in the
19   State of South Carolina, and including throughout the entire duration of PLAINTIFF's
20   short-term stay in the State of South Carolina.

21       81.    Furthermore, in that same week leading up to January 16, 2012, PLAINTIFF
22   alleges that she abruptly started receiving numerous and various text messages, phone
23   calls, instant messages, direct messages, friends' requests, and comments on her social
24   media and cellular phone from friends, family members, former schoolmates, and even
25   long-lost friends, with some individuals who PLAINTIFF had rarely spoken to in several
26   years, all in the same time frame of DEFENDANTS J.C. REDDERSEN and M.D.
27   REDDERSEN's sudden change in behavior towards PLAINTIFF, while living in the State
28   of South Carolina. PLAINTIFF further alleges that these random calls and messages from

1 │ various people throughout PLAINTIFF'S life, continued as PLAINTIFF moved from State
2 │ to State, in the first 6 months since January 14, 2012.

3 │     82.    PLAINTIFF is informed, believes, and thereon alleges that in the first month
4 │ of PLAINTIFF's arrival in the State of South Carolina, PLAINTIFF confronted
5 │ DEFENDANTS J.C. REDDERSEN and M.D. REDDERSEN, after their abrupt change in
6 │ behavior and intended secrecy towards PLAINTIFF. PLAINTIFF further alleges she
7 │ respectfully confronted DEFENDANTS J.C. REDDERSEN and M.D. REDDERSEN
8 │ about being surveilled and/or digitally monitored, specifically in the privacy of her own
9 │ room. Moreover, PLAINTIFF alleges that DEFENDANTS J.C. REDDERSEN and M.D.
10 │ REDDERSEN became immediately overly defensive and denied any wrongdoing by
11 │ becoming hysterical and continued to viciously gaslight, yell, demean, and mock
12 │ PLAINTIFF. Thus, by demonstrating this pattern of behavior, PLAINTIFF further alleges
13 │ that DEFENDANT M.D. REDDERSEN knew or must have known about the
14 │ FRAUDULENT WEBSITE's existence by deliberately and consciously providing aid,
15 │ comfort, and support by aiding and abetting DEFENDANT J.C. REDDERSEN and his
16 │ deliberate acts of terror, violence, surveillance, and censorship over PLAINTIFF in this
17 │ criminal and civil conspiracy.

18 │     83.    Moreover, PLAINTIFF is informed, believes, and thereon alleges that on this
19 │ same week of January 16, 2012, while PLAINTIFF was living in the State of South
20 │ Carolina, DEFENDANTS APPLE; GOOGLE; GOOGLE INTERNATIONAL; and
21 │ ALPHABET, fraudulently, unlawfully, and illegally permitted and allowed four (4)
22 │ pornographic and pedophilic cell phone applications; four (4) fraudulent applications on
23 │ the APPLE APP STORE, and four (4) fraudulent applications on the GOOGLE PLAY
24 │ STORE (hereinafter combined and referred to as, "FRAUDULENT CELL PHONE
25 │ APPLICATIONS"), to each go live for paid subscription-based monthly prices, under the
26 │ fraudulent application developer, fraudulent website developer, and fraudulent adult film
27 │ entertainer/producer and/or sex worker that goes by the name, identity, persona and
28 │ likeness of, "ATHENA REDDERSEN." PLAINTIFF further alleges that these fraudulent

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

applications were made possible by the locating, hacking, and selling of the FRAUDULENT WEBSITE, originally developed by DEFENDANT J.C. REDDERSEN in and around 1996, as mentioned above.

84.   PLAINTIFF is informed, believes, and thereon alleges, that the fraudulent application developer, fraudulent website developer, and fraudulent adult film entertainer/producer and/or sex worker that goes by the name, identity, persona, and likeness, of, "ATHENA REDDERSEN" is also being sold to DEFENDANTS DIRECTV; DIRECTV INTERNATIONAL; and their parent company, AT&T; and AT&T SERVICES, and other numerous Telecom corporations, or Telecom Doe Defendants, inclusive, and through their "On-Demand" and/or "Pay Per View" independent subscription adult entertainment channels (hereinafter combined and referred to as, "FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS"), wherein the public is able to watch everything the four (4) pornographic and pedophilic cell phone applications are streaming and being posted by the fraudulent APPLE APP STORE and GOOGLE PLAY STORE monthly subscribers. Individuals fraudulently purchasing the FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS are also able to access the entire and unedited cloud-based "calendar archive" of PLAINTIFF's stored private life events, memories, and personal experiences, in which PLAINTIFF alleges are all being kept and stored on a classified and state-sponsored cloud storage network and/or server located and accessed directly by and through the FRAUDULENT WEBSITE and the embezzled state-sponsored cloud software that the publicly accessible domain resides in, as mentioned above.

85.   PLAINTIFF is informed, believes, and thereon alleges that both DEFENDANTS J.C. REDDERSEN and M.D. REDDERSEN knew that the FRAUDULENT WEBSITE was hacked and turned into a pornographic/pedophilic website before it was sold and went commercial via corporate entities in the entertainment sector, in January 2012. PLAINTIFF further alleges that both Defendants were aware of the hacking because they had been monitoring PLAINTIFF all her life via the

1  FRAUDULENT WEBSITE, or since 1996, as that was the FRAUDULENT WEBSITE's
2  initial purpose – to digitally monitor, surveil, stalk and spy on PLAINTIFF. Therefore,
3  PLAINTIFF additionally alleges that both Defendants knew the initial year of the hacking
4  as it began to unfold, and as the hacking absolutely had to occur between the years 2009 to
5  2011, for the January 2012 fraudulent debut of the FRAUDULENT WEBSITE's hacking
6  via various and numerous corporate entity platforms in the entertainment sector.

7  86.  PLAINTIFF is informed, believes, and thereon alleges that both,
8  DEFENDANT APPLE and DEFENDANT GOOGLE, and including DEFENDANT
9  GUTIERREZ and O'BRIEN, who are fraudulently, unlawfully, and illegally doing
10 business as and/or with the name "ATHENA REDDERSEN," were and continue to be
11 actively and knowingly censoring, blocking, and obstructing PLAINTIFF from having
12 access to these FRAUDULENT CELL PHONE APPLICATIONS on both App Store
13 platforms, DEFENDANT APPLE's APP STORE and DEFENDANT GOOGLE's PLAY
14 STORE.

15 87.  PLAINTIFF further alleges that she is unaware of the exact type of
16 censorship tactics DEFENDANTS APPLE and GOOGLE are implementing on behalf of
17 permitting DEFENDANTS GUTIERREZ and O'BRIEN to sell the FRAUDULENT
18 CELL PHONE APPLCIATIONS on its digital platforms. Moreover, PLAINTIFF is
19 further aware, informed, believes, and thereon alleges that the FRAUDULENT WEBSITE
20 has GPS technology installed in its state-sponsored software and that the PLAINTIFF's
21 physical location and exact GPS coordinates are fully on display twenty-four hours a day
22 and seven days a week (24/7). Therefore, PLAINTIFF is aware, understands, and is
23 knowledgeable, that as long as an individual and/or corporation(s) have control of
24 someone's exact digital location and physical address, though unprecedented and extreme,
25 they further have additional control over the network and/or software in which it digitally
26 resides in, for example, in the corporate seizing of the FRAUDULENT WEBSITE and the
27 State-Sponsored Solar Powered Tracking Device, the perpetrator and/or Defendant can
28 then implement additional censorship through suppressive computer coding (i.e.,

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

blocking/obstructing/suppressing the State-Sponsored Solar Powered Tracking Device [or the PLAINTIFF who is digitally programmed and Matrixed into the software] from accessing itself) by and through an unprecedented and extreme type of CCTV or "Parental Control," wherein the FRAUDULENT WEBSITE and its extended for-sale corporate sector fraudulent interactive services provides direct access into digitally surveilling the PLAINTIFF's personal electronic devices through digital suppressive methods, as well as physical suppressive methods (i.e., blocking the PLAINTIFF's current physical GPS location from accessing anything in relation to the repressive corporate network and its intentional misrepresentation of "ATHENA REDDERSEN" over the Internet).

88.    As mentioned above, PLAINTIFF is informed, believes, and thereon alleges that this type of extremist CCTV or "Parental Control" method in preventing and obstructing the PLAINTIFF from accessing the FRAUDULENT WEBSITE was initially implemented by DEFENDANT J.C. REDDERSEN, as early as 2004, to the PLAINTIFF's knowledge. Moreover, as the FRAUDULENT WEBSITE was seized, hacked, and sold in January 2012, the "Parental Controls" became more extremist as the corporate sector took control over the FRAUDULENT WEBSITE, thus formed an authoritative-like CCTV, and in furtherance of their illegal profiteering scheme and the prevention of accountability, as the PLAINTIFF would be isolated and obstructed in accessing any of the real evidence to bring forth in a court of law. Therefore, Defendants' collective collusion is clear in deliberately obstructing and digitally suppressing the PLAINTIFF's pursuit for justice, accountability, freedom, and privacy and due to its extremist authoritative dictatorship and sophisticated repressive network of intimidation, weaponization, and systemic desensitization and normalization of these implemented social evils for sale.

89.    PLAINTIFF is informed, believes, and thereon alleges that DEFENDANTS GUTIERREZ and O'BRIEN are further implementing these active censorship techniques in partnership with the Telecom sector by and through systemic corporate intimidation, suppression and oppression tactics by using the same methods mentioned above with regard to PLAINTIFF's inaccessibility to DIRECTV's and/or AT&T's, and Telecom Doe

Defendants' FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS, and in furtherance of obstructing PLAINTIFF's pursuit for justice, accountability, freedom, and privacy, as mentioned above.

90.    PLAINTIFF is informed, believes, and thereon alleges the following with regard to the extremism, obstruction, and isolated censorship solely targeted against PLAINTIFF:

(1)    That since 2012, PLAINTIFF has not been able to access the FRAUDULENT CELL PHONE APPLICATIONS on both, Android OS cellular phones and Apple iOS cellular phones, by searching for the fraudulent application developer, "ATHENA REDDERSEN" and/or any of the four fraudulent cell phone application titles, currently being sold by and through DEFENDANT APPLE's APP STORE and DEFENDANT GOOGLE's PLAY STORE.

(2)    That since 2012, PLAINTIFF has not been able to get the same publicly accessible, and hyper-sexualized search results, such as explicit images, videos, comments, downloadable DROPBOX links ("FRAUDULENT DROPBOX DOWNLOADS"), etc. for "ATHENA REDDERSEN" and/or "Jane Roe No. 1" on any web browser or search engine, such as Google Chrome, Apple Safari, Microsoft Edge, Firefox, DuckDuckGo, Brave, Onion Browser, etc., as PLAINTIFF avidly "Google" searched herself since the year 2012, when PLAINTIFF first realized she was being surveilled, while she was living in the State of South Carolina. Additionally, as mentioned above, PLAINTIFF has been searching the search results of her identity since at least the year 2004, as social media was on the rise and became more popular in the early 2000s.

(3)    PLAINTIFF further alleges that since 2012, Telecom ISP providers are also playing a role in the blatant censorship and digital suppression of PLAINTIFF's Internet searches, such as DEFENDANT

AT&T. PLAINTIFF also alleges that the blatant censorship and digital suppression is still true when using a Virtual Private Network (VPN), when PLAINTIFF is surfing the Internet, and therefore, is a clear indication that the Telecom sector is directly involved in this alleged repressive corporate network. Additionally, PLAINTIFF is blocked, obstructed, and censored from having access to DIRECTV and/or any other Telecom Doe Defendants' FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS that include PLAINTIFF's name in them, or are in association with the FRAUDULENT CELL PHONE APPLICATIONS.

(4)      That since 2012, DEFENDANTS APPLE; GOOGLE; AT&T; DIRECTV; O'BRIEN; GUTIERREZ; and Telecom/ISP Doe Defendants, who are fraudulently unlawfully, and illegally doing business as and/or with the name "ATHENA REDDERSEN," have not only implemented additional censorship within PLAINTIFF's personal electronics, but also implemented additional censorship within the vicinity of her exact location and/or her current address in real time, i.e., PLAINTIFF further alleges that she remains censored when she "Google" searches herself on a public computer, such as in a library, or through an employer's desktop computer someone else's personal computer, and/or any other location and/or device that does not belong to the PLAINTIFF.

91.    Furthermore, in the summer of 2012, while residing back in the State of California, homeless and temporarily living with a John Roe, PLAINTIFF had asked John Roe to search, "ATHENA REDDERSEN" on a Google search engine, and on John Roe's Android cell phone, while PLAINTIFF was in the same vicinity as John Roe, or sitting right beside him at his home address, and PLAINTIFF continued to be censored and remained blocked, digitally suppressed, and obstructed, and   from accessing the FRAUDULENT WEBSITE and/or the hyper-sexualized search results of "ATHENA

40

REDDERSEN," on John Roe's cell phone due to DEFENDANTS APPLE; GOOGLE; AT&T; and/or Telecom Doe Defendants; J.C. REDDERSEN; O'BRIEN and GUTIERREZ, censoring, suppressing, obstructing, and blocking PLAINTIFF's approximate vicinity through her exposed GPS coordinates, and/or current physical address location in real time by and through the FRAUDULENT WEBSITE and State-Sponsored Solar Powered Tracking Device. PLAINTIFF further alleges that her (24/7) exposed GPS location is publicly available and/or displayed through DEFENDANT J.C. REDDERSEN's FRAUDULENT WEBSITE and DEFENDANT O'BRIEN and GUTIERREZS' FRAUDULENT CELL PHONE APPLICATIONS / FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS, therefore, making it easier for the repressive corporate network to collectively implement additional digital suppression and permanent censorship targeted specifically and solely against PLAINTIFF in an isolated and authoritative fashion.

92.    Moreover, PLAINTIFF further alleges that again, in the summer of 2015, while visiting the city of Los Angeles, in the State of California, PLAINTIFF had requested and asked a Jane Roe to use her personal laptop to search both "ATHENA REDDERSEN" and the direct Uniform Resource Locator ("URL") for the FRAUDULENT WEBSITE on multiple browsers and search engines, while PLAINTIFF was in the same vicinity as Jane Roe and at the same physical location, or at Jane Roe's house, and PLAINTIFF continued to be censored, digitally suppressed, and remained blocked and obstructed from accessing the FRAUDULENT WEBSITE and the hyper-sexualized search results of "ATHENA REDDERSEN," on Jane Roe's personal laptop due to DEFENDANTS O'BRIEN;  GUTIERREZ; APPLE; GOOGLE; AT&T; and/or Telecom Doe Defendants, who are fraudulently, unlawfully, and illegally doing business as and/or with the name "ATHENA REDDERSEN," censoring, suppressing, obstructing, and blocking PLAINTIFF's approximate vicinity through her exposed GPS coordinates, and/or current physical address location in real time by and through the FRAUDULENT WEBSITE and State-Sponsored Solar Powered Tracking Device. PLAINTIFF further

alleges that her (24/7) exposed GPS location is publicly available and/or displayed through DEFENDANT J.C. REDDERSEN's FRAUDULENT WEBSITE and DEFENDANT O'BRIEN and GUTIERREZS' FRAUDULENT CELL PHONE APPLICATIONS / FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS, therefore, making it easier for the repressive corporate network to collectively implement additional digital suppression and permanent censorship targeted specifically and solely against PLAINTIFF in an isolated and authoritative fashion.

93.    PLAINTIFF is informed, believes, and thereon alleges that since 2012, DEFENDANTS APPLE; GOOGLE; DIRECTV; AT&T; O'BRIEN, GUTIERREZ and DOE DEFENDANTS, inclusive, who are fraudulently, unlawfully, and illegally doing business as and/or with the name "ATHENA REDDERSEN," have complicitly and intentionally implemented further additional censorship and digital suppression against PLAINTIFF other than what was originally pre-programmed in the FRAUDULENT WEBSITE by DEFENDANT J.C. REDDERSEN in and around 1996. Therefore, indicating the same fact pattern throughout the years, as PLAINTIFF is always testing and investigating the repressive corporate network's methods of censorship and digital suppression of the FRAUDULENT WEBSITE URL, since 2014, and further investigating more frequent Internet search results of "ATHENA REDDERSEN," since 2012.

94.    PLAINTIFF is informed, believes, and thereon alleges that on, about, or between the years 2009 to 2012, DEFENDANT GUTIERREZ, who is fraudulently, unlawfully, and illegally doing business as and/or with the name "ATHENA REDDERSEN," and DEFENDANT O'BRIEN, who is acting as DEFENDANT GUTIERREZ's fraudulent business partner, accomplice, supporter, comforter, and aider and abettor, were actively in correspondence with rogue APPLE and GOOGLE employees, managers and/or executives from both DEFENDANT APPLE's APP STORE and DEFENDANT GOOGLE's PLAY STORE via electronic communications, in order to have the approved FRAUDULENT CELL PHONE APPLICATIONS go live in both App Store platforms in January 2012. PLAINTIFF further alleges that DEFENDANTS

1   O'BRIEN and GUTIERREZ were also actively in correspondence with rogue Telecom
2   sector employees, managers and/or executives, such as DEFENDANTS DIRECTV and
3   AT&T, and numerous other Telecom Doe Defendants, inclusive, in order to sell the state-
4   sponsored "ATHENA REDDERSEN" classified storage network/server and software
5   programming via the FRAUDULENT WEBSITE and convert, divert, and integrate them
6   into the FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS that
7   mirror the above mentioned App Store platform FRAUDULENT CELL PHONE
8   APPLICATIONS and FRAUDULENT WEBSITE functions.

9       95.   PLAINTIFF is informed, believes, and thereon alleges that both
10  DEFENDANTS APPLE and GOOGLE's rogue app store employees, managers and/or
11  executives acted with malice intent, perversion, and with intent to intimidate, oppress,
12  suppress, and repress PLAINTIFF, and further including other victimized and sexually
13  exploited Jane and John Roes, who engaged in prior sexual relations and intimate
14  relationships with PLAINTIFF, by and through DEFENDANT APPLE and GOOGLE's
15  brazenly calculated and collective premeditated censorship dictated and targeted solely
16  against PLAINTIFF.

17      96.   More specifically, as mentioned above, the FRAUDULENT WEBSITE
18  displays a clear misappropriated, embezzled, converted, and diverted state-sponsored
19  software programming that functions as a state-sponsored cloud storage network and that
20  stores the personal life events and private life story of PLAINTIFF and her childhood
21  development into adolescence, and adulthood. Therefore, all of PLAINTIFF's prior
22  intimate relationships, sexual relations, and/or sexual development and sexual journey is
23  videographically documented, stored, and revealed on the FRAUDULENT WEBSITE in
24  the form of an online "time machine" and/or cloud stored calendar archive of
25  PLAINTIFF's personal and private affairs, and searchable by Year/Month/Date/Time.
26  Moreover, this "invented" and stolen technology, as mentioned above, is part of the
27  unprecedented and experimental medical discovery DEFENDANT J.C. REDDERSEN
28  discovered in and around 1996.

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

97.     PLAINTIFF is informed, believes, and thereon alleges that all other victimized and sexually exploited Jane and John Roes are **not** restricted, censored, obstructed and/or blocked from having access to the FRAUDULENT WEBSITE on the Internet and/or the FRAUDULENT CELL PHONE APPLICATIONS on DEFENDANT APPLE's APP STORE and DEFENDANT GOOGLE's PLAY STORE and/or the FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS on DEFENDANTS DIRECTV and AT&T's satellite/cable television streaming services. Moreover, PLAINTIFF further alleges that due to the FRAUDULENT WEBSITE being publicly accessible by the global population, and its surveillance-based functions being an open secret and/or public knowledge, PLAINTIFF is aware that the general public is likely informed and aware that she is being censored, suppressed, obstructed, and blocked from having access to the FRAUDULENT WEBSITE and/or FRAUDULENT DROPBOX DOWNLOADS and/or FRAUDULENT CELL PHONE APPLICATIONS and/or FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS, therefore, all victimized and sexually exploited Jane and John Roes, their spouses, and their direct family members, are too intimidated, suppressed, oppressed, embarrassed, and humiliated to come forward in this action, or even at all, on their own behalf. PLAINTIFF additionally alleges that she has tried to reach out to a few of the victimized and sexually exploited Jane Roes over the years to see if they were willing to cooperate and they respectfully declined and/or ignored PLAINTIFF's messages.

98.     PLAINTIFF is informed, believes, and thereon alleges that DEFENDANTS APPLE; GOOGLE; DROPBOX; DIRECTV; and AT&T's (and further including other Telecom Doe Defendants') rogue employees, managers and/or executives acted with malice and intent to collectively intimidate, censor, repress and suppress the Global Media News Outlets, by and through their brazenly calculated and collective premeditated and unprecedented dictated and isolated censorship targeted solely against PLAINTIFF. Moreover, PLAINTIFF further alleges that the intimidation campaign brought on by the repressive corporate network,    DEFENDANTS APPLE; GOOGLE; DROPBOX;

DIRECTV; and AT&T (and further including other Telecom Doe Defendants, inclusive) further affected the Global Media News Outlets, and suppressed news reports on the crisis, due to the criminality of the free distribution of the wrongful, malicious, repulsive, immoral, unlawful, and illegal gender-based violence, LGTBQ+ violence, and other violent obscenities and profanities being freely disseminated on the FRAUDULENT WEBSITE, therein submitting journalists and investigative reporters to witnessing a live crime in real time, and therefore, making it more intimidating and difficult to report on the illegal, inhumane, and unconstitutional activities that were actively taking place online and on the Internet in real time, twenty-four hours a day and seven days a week (24/7).

99.    Therein, again, further isolating and preventing PLAINTIFF from seeking help, assistance, refuge, acknowledgement and/or bringing attention to this matter alone, and as a victim of several Constitutional, Federal, and State legal violations being blatantly committed in plain sight by the authoritative repressive corporate network and its participants, perpetrators, and offenders.

100.    PLAINTIFF is informed, believes, and thereon alleges that DEFENDANTS APPLE; GOOGLE; DROPBOX; DIRECTV; and AT&T's (and further including other Telecom Doe Defendants, inclusive) rogue employees, managers and/or executives acted with malice and intent to intimidate, repress and suppress the State of California authorities/agencies and the Federal United States Government authorities/agencies, by and through their brazenly calculated and collective premeditated, and unprecedented isolated censorship targeted solely against PLAINTIFF, and in furtherance of overthrowing the Federal and State Government with an unprecedented global cyberwarfare-based insurrection and thus, disrupting the State of California and United States of America's lawful line of order. Therefore, DEFENDANTS APPLE; GOOGLE; DROPBOX; DIRECTV; AT&T and further including numerous other Telecom and Banking Sector Doe Defendants, inclusive, dictating the role of an Authoritarian regime due to the **unregulated** tech, entertainment, and banking sector and by limiting personal freedoms of PLAINTIFF and other victimized Jane and John Roes. Additionally, said

corporate Defendants and Individual Defendants, inclusive, have enabled a proxy war on clear misappropriated and embezzled state-sponsored technology/assets via the FRAUDULENT WEBSITE by and through the selling of state-secrets to the general public since January 2012 and up to the present date.

101. PLAINTIFF is informed, believes, and thereon alleges that since January 2012, said entertainment corporate sector (Internet based and Telecom based) have intimidated, conditioned, normalized, desensitized, and weaponized disinformation, misinformation, censorship, and the character assassinations of PLAINTIFF, Jane Roe No. 1, and those of PLAINTIFF's former loved ones and partners by and through their implemented systemic lawlessness, blatant fraudulent activities, dissemination of profanities, obscenities, and targeted hate crimes against gender-based violence and the LGBTQ+ community.

102. PLAINTIFF is informed, believes, and thereon alleges, that in order to create a higher demand for, and bring more widespread attention to, together and in conspiracy with one another, DEFENDANTS APPLE; GOOGLE; DROPBOX; DIRECTV; AT&T; O'BRIEN and GUTIERREZ (and further including numerous other Telecom Doe Defendants, inclusive), also complicitly placed television advertisements for these FRAUDULENT CELL PHONE APPLICATIONS, FRAUDULENT DROPBOX DOWNLOADS, FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS and FRAUDULENT WEBSITE in January 2012, under the stolen and fraudulent identity of "ATHENA REDDERSEN," with publicly advertised placements stating that the fraudulent unlawful, and illegal cell phone applications are available on the GOOGLE PLAY STORE and APPLE APP STORE, and further available on your local listings and/or "On-Demand" and/or "Pay Per View" adult entertainment channels by and through DEFENDANTS DIRECTV, AT&T, and said Telecom Doe Defendants, inclusive. Moreover, said Defendants, and each of them, further advertised that the "phenomena" was freely accessible and available via the FRAUDULENT WEBSITE, and thereafter, also publicized and published the fraudulent intrusive surveillance domain URL address,

1 | and further advertised the free pornographic downloads from DEFENDANT DROPBOX's
2 | file sharing services on the televised advertisements, starting in the year 2012.

3 |   103.   PLAINTIFF is informed, believes, and thereon alleges, that she became aware
4 | of the televised advertisements in January 2012, while living in the State of South
5 | Carolina, when she had overheard DEFENDANT M.D. REDDERSEN approach
6 | DEFENDANT J.C. REDDERSEN to discuss the broadcasted advertisements with shock,
7 | while PLAINTIFF was in the next room over with the door open. Furthermore, as the
8 | months and years went on, and PLAINTIFF traveled from State to State, it became clear
9 | that persons unknown to PLAINTIFF were not only stalking her whereabouts and daily
10 | life via the Internet but were well informed of her past sex life, sexuality, and sexual
11 | orientation, as she was repetitively sexually harassed, battered, psychologically tormented,
12 | and discriminated against over her personal identity in the years to come ahead. This was a
13 | clear pattern of behavior that PLAINTIFF frequently encountered and began to experience
14 | throughout the past decade, wherein PLAINTIFF had never before encountered this type
15 | of hostile, unpleasant, harassing, and obnoxious pattern of behavior, prior to 2012.
16 | Therefore, it was again apparent, that the only way the word of the FRAUDULENT
17 | WEBSITE got out to the public, rapidly at once, was through its commercially broadcast
18 | advertisements.

19 |   104.   Additionally, both, DEFENDANTS APPLE and GOOGLE where actively
20 | and knowingly (internationally) advertising these fraudulent, unlawful, and illegal
21 | applications on the front page of their cell phone application store platforms, and at times
22 | as "App of the Day" for the world to view and interact with, as the fraudulent, unlawful,
23 | and illegal cell phone applications quickly became popular **top selling** cell phone
24 | applications on both Defendant platforms, the APPLE APP STORE and GOOGLE PLAY
25 | STORE. Furthermore, DEFENDANT DROPBOX continuously reaped the benefits of the
26 | free advertisements on DEFENDANT APPLE's APP STORE and DEFENDANT
27 | GOOGLE's PLAY STORE App Store advertisements, and including on the above-
28 | mentioned televised advertisements, as DEFENDANT DROPBOX freely engaged in more

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

1 | user signups, both, in free account user sign ups and in paid user account sign ups, starting
2 | in the year 2012.

3 |   105.  Moreover, not only were both DEFENDANT APPLE's APP STORE and
4 | DEFENDANT GOOGLE's PLAY STORE actively and publicly advertising these
5 | fraudulent, unlawful, and illegal applications on the Internet, but further allowed the
6 | fraudulent application developer, "ATHENA REDDERSEN," to advertise the
7 | FRAUDULENT WEBSITE in the description section of each of the four applications, in
8 | both App Stores, so that if APPLE and GOOGLE consumers did not want to pay for these
9 | four (4) FRAUDULENT CELL PHONE APPLICATIONS on a monthly basis, they could
10 | directly access the sexually exploitative content on the FRAUDULENT WEBSITE that
11 | DEFENDANT J.C. REDDERSEN converted and misappropriated in 1996 and that
12 | DEFENDANTS O'BRIEN and GUTIERREZ located, hacked, and sold in 2012, via direct
13 | URL and/or web browser.

14 |   106.  More specifically, the general public would be given free access to the hacked
15 | and fraudulent intrusive surveillance domain, which displays and broadcasts PLAINTIFF
16 | in real time 24/7, along with the online "time machine" and/or calendar archive of her
17 | documented personal and private life events (by and through the unprecedented and
18 | experimental "medical discovery"). Additionally, the public would be able to access the
19 | free downloadable DROPBOX links/folders of explicit images and videos of PLAINTIFF
20 | and all her prior and former intimate/sexual partners, in which are fraudulently set up on
21 | the website to portray the misrepresentation of sexual violence and sexual exploitation as a
22 | mutual and consensual activity being disseminated by PLAINTIFF. Furthermore, the
23 | public does not have to pay for access through DEFENDANT APPLE's APP STORE or
24 | DEFENDANT GOOGLE's PLAY STORE to access any of the sexual violence and
25 | sexually exploitative downloadable folders and/or images/videos.

26 |   107.  Therefore, DEFENDANTS APPLE and GOOGLE have inhumanely and
27 | fraudulently created the willful and deliberate selling of the PLAINTIFF as their "product"
28 | and/or "service" to its global consumer base. But for DEFENDANTS APPLE and

GOOGLE selling and distributing the PLAINTIFF as their top selling "product" and/or "service," the FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS being sold to DIRECTV, AT&T, and Telecom Doe Defendants, inclusive, would have not been possible. Further, the FRAUDULENT DROPBOX DOWNLOADS would not have existed, nor been disseminated to the public, free of charge.

108.   PLAINTIFF is informed, believes, and thereon alleges that the fraudulent "business model" of the publicly available FRAUDULENT WEBSITE vs the monthly subscription fee based FRAUDULENT CELL PHONE APPLICATIONS is that an individual, John Doe, or Renter, must pay to vandalize, loot, ransack, and destroy the layout of the fraudulent surveillance cyber domain through postings and publications made possible by DEFENDANT APPLE's APP STORE and/or DEFENDANT GOOGLE's PLAY STORE. More specifically, if an individual, Doe, or Permissive User, is visiting, squatting, or lurking the fraudulent surveillance domain to "spy" on PLAINTIFF's past and present day via the cloud-based "calendar archive" and live broadcasting and/or the live public postings/publications being streamed and disseminated by and through the APPLE APP STORE and GOOGLE PLAY STORE, the individual, or Permissive User, using the fraudulent surveillance domain is limited to rating, reviewing, commenting, downloading, lurking, and viewing/zooming/manipulating the screen and/or monitor via computer cursor and/or touch screen, on the hacked FRAUDULENT WEBSITE. Whereas an individual who is subscribing monthly to one or more of the FRAUDULENT CELL PHONE APPLICATIONS, is paying to publicly post vulgar images, videos, and obscenities for the rest of the world to access, view, download, and interact with. Therefore, the paying monthly subscribers, or "Paying John Does" and/or "Renters" are the perpetrators knowingly, deliberately, and consciously creating the unlawful, illegal, and immoral content, meanwhile the stalkers/ lurkers/ squatters/ "spies", or "Freeloading Does" and/or "Permissive Users" (hereinafter combined and referred to as the "Rogue Army") are the perpetrators stalking, downloading, interacting with, and being entertained by the violent content being disseminated for free at the PLAINTIFF's expense.

109.   PLAINTIFF is informed, believes, and thereon alleges that all vandalization, looting, ransacking, and destroying of the layout of the fraudulent surveillance domain is made possible through DEFENDANT J.C. REDDERSEN's initial creation and re-programming of the classified assets on the FRAUDULENT WEBSITE, wherein he created a real time and live broadcasting cloud-based "calendar archive," as mentioned above, of PLAINTIFF's personal and private life events. Therefore, all former sexual relations/encounters are freely accessible by and through PLAINTIFF's fraudulent calendar archive on the FRAUDULENT WEBSITE and additionally, all sexual activity is accessible by said Year/Month/Date/Time in the calendar archive, which said year, month, date, and time are also being displayed on each individual public posting/publication by and through the Paying John Does and/or Renters of DEFENDANT APPLE APP STORE's and DEFENDANT GOOGLE PLAY STORE's FRAUDULENT CELL PHONE APPLCIATIONS.  Furthermore, the entire fraudulent "business model" revolves primarily around the state-sponsored stored calendar archive of PLAINTIFF's personal and private life events, as the cloud-based "calendar archive" is supplying said perpetrator Renters or Paying John Does with an unlimited supply of "ammunition" for the postings and publications of repetitive sexually exploitative vulgarities and obscenities of PLAINTIFF and all her prior sexual encounters in the form of manipulated and edited imagery.

110.   PLAINTIFF further alleges that though DEFENDANT J.C. REDDERSEN stole and misappropriated the classified technology assets and somehow integrated them on a public domain (.com), PLAINTIFF alleges that he also manipulated the layout of the classified software by and through HTML coding on the webpage layout, as DEFENDANT GUTIERREZ did, and has been doing, continuously since 2012. PLAINTIFF is further aware of this because it is intentional and convenient for the classified technology assets, belonging to military defense aircraft parts, such as surveillance/combat drone software and/or surveillance/combat aircraft software having a stored function of an easily accessible cloud-based "calendar archive" storing and

documenting decades of continuous activity of the PLAINTIFF and her upbringing, personal history, life experiences, and private life story.

111.   PLAINTIFF further alleges that as time went on from 2012 to 2023, the online sex trafficking ring grew and expanded, and especially during the COVID-19 pandemic years from 2020-2023, wherein both said perpetrators, the Paying John Does and/or Renters and Freeloading Does and/or Permissive Users (the Rogue Army), multiplied during the federal pandemic lockdown and started working, organizing, and communicating together via the hacked FRAUDULENT WEBSITE and further correlated and expanded the terrorist network and global sex trafficking ring, wherein the Freeloading Does and/or Permissive Users would stalk the cloud-based "calendar archive" of PLAINTIFF's documented personal and private life events, stored on the state-sponsored cloud/network/server, and would then request/order/suggest to "send" images/videos/public postings/publications of said Time/Date/Month/Year of PLAINTIFF's digital calendar archive and/or of her former sexual and intimate partners, to the Paying John Does and/or Renters, in the comments section and/or "chat room" of the hacked FRAUDULENT WEBSITE.

112.   PLAINTIFF further alleges that the FRAUDULENT WEBSITE mirrors that of a cross between Twitter, Instagram, and TikTok, and functions as a cruel and inhumane social media platform, controlled and dictated by Internet Trolls, wherein there is zero absolute content moderation, and the fraudulent and extremist defamatory content, profanities, and obscenities are being repetitively and maliciously posted, streamed, and published with impunity to a global audience and with utter disregard for humanity and the innocent lives being exploited against their wills, and at the PLAINTIFF's expense, solely for entertainment purposes.

113.   PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANT GUTIERREZ and O'BRIEN, who are responsible for locating and hacking DEFENDANT J.C. REDDERSEN's FRAUDULENT WEBSITE in approximately the years 2009 to 2012, reprogrammed the layout of FRAUDULENT WEBSITE and hacked/developed the

1  FRAUDULENT CELL PHONE APPLICATIONS to **automatically generate**
2  downloadable DROPBOX links and/or categorized folders, per each public pornographic
3  and/or pedophiliac and/or hyper-sexualized photographic/videographic postings and
4  publications, facilitated by a Paying John Doe and/or Renter from DEFENDANT
5  APPLE's APP STORE and/or DEFENDANT GOOGLE's PLAY STORE. Furthermore,
6  PLAINTIFF further alleges that each public posting/publication on each of the
7  FRAUDULENT CELL PHONE APPLICATIONS, then mirrors the posts being
8  disseminated on the freely accessible FRAUDULENT WEBSITE and are then
9  subsequently made available for free download via DEFENDANT DROPBOX's file
10 sharing services. PLAINTIFF additionally alleges that DEFENDANT GUTIERREZ and
11 O'BRIEN are constantly "reinventing" the layout of the FRAUDULENT WEBSITE to
12 keep user-engagement high and are further desperate to find new ways to unlawfully,
13 illegally, and immorally monetize the FRAUDULENT WEBSITE, which is already a free
14 and fraudulent interactive computer service in its "normal" operating function on the
15 hacked state-sponsored public domain on the Internet.

16     114.   Additionally, as mentioned above, any Freeloading Jane/John Doe and/or
17 Permissive User and/or stalkers/ squatters/ "spies" of the FRAUDULENT WEBSITE can
18 download said pornographic and/or pedophiliac and/or hyper-sexualized
19 photographic/videographic postings/publication. Moreover, PLAINTIFF further alleges
20 that both, Paying John Does and/or Renters and Freeloading Does and/or Permissive Users
21 (the Rogue Army), are downloading all of PLAINTIFF's prior/former sexual relations,
22 past sexual assaults, past childhood molestation incidents, and even including everyday
23 incidents of natural nudity via daily routine of hygienic practices, from and of,
24 PLAINTIFF's past (childhood/adolescence/young adulthood) and present (adulthood), or
25 1996 to the current Year/Month/Date/Time, knowingly, willingly, and deliberately against
26 PLAINTIFF's will, and without the authorization or consent of PLAINTIFF and/or
27 without the authorization or consent of any of her previous intimate/sexual partners.

28

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

115.  PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANT GUTIERREZ has been using DEFENDANT DROPBOX's file sharing cloud services to distribute child pornography, and further including all of PLAINTIFF's prior sexual relations, past sexual assaults, past childhood molestation incidents, and including everyday incidents of natural nudity via daily routine of hygienic practices of the PLAINTIFF's past (childhood/adolescence/young adulthood) and present (adulthood), or 1996 to the present, to its global audience by and through the FRAUDULENT WEBSITE. No purchase or application subscription is necessary for a Freeloading Jane/John Doe and/or Permissive User, to download the unlawful and illegal pornographic and pedophilic videos and images via the FRAUDULENT WEBSITE, which continues to be open and publicly accessible.

116.  PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANT DROPBOX should have known how their services were being fraudulently, unlawfully, and illegally advertised and marketed, as the FRAUDULENT CELL PHONE APPLCIATIONS and FRAUDULENT WEBSITE were, and still are, public knowledge and publicly accessible, due to televised and Internet advertisements that lead a global society directly to DEFENDANT DROPBOX's and DEFENDANT GUTIERREZ's distribution of child pornography, gender-based violence, and violence against the LGBTQ+ community.

117.  PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANT DROPBOX had a sudden high increase in new users (paid and non-paid) for its cloud file sharing services in 2012, due to how its file sharing "services" were being advertised via the FRAUDULENT WEBSITE, wherein it was initially pirated, misappropriated, created and developed by DEFENDANT J.C. REDDERSEN and located, hacked, disseminated, and sold by DEFENDANTS GUTIERREZ and O'BRIEN.

118.  Furthermore, PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANT DROPBOX also benefited financially by the "free marketing" via the

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

FRAUDULENT WEBSITE, with more retention in paid subscribers for its file sharing cloud services in 2012 and beyond.

119. PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANT GUTIERREZ had initially laid out the hacked and reformatted/reprogrammed pornographic and pedophilic images/videos of PLAINTIFF on the FRAUDULENT CELL PHONE APPLICATIONS (wherein it displayed the FRAUDULENT WEBSITE in the same format/layout) from approximately the year 2009 to the year 2012, prior to its global release in January 2012. PLAINTIFF further alleges that DEFENDANT GUTIERREZ and O'BRIEN did the majority of the work in searching /locating /ransacking /vandalizing /looting for all of PLAINTIFF's former sexual relations and former sexual encounters, prior to allowing the Paying John Does and/or Renters or Doe Defendants, inclusive, on DEFENDANT APPLE's APP STORE and DEFENDANT GOOGLE's PLAY STORE platforms to promote sexual violence by posting nonstop/continuous/repetitive violent imagery of PLAINTIFF and her former intimate/sexual partners, twenty-four hours a day and seven days a week (24/7), since 2012.

120. Moreover, PLAINTIFF further alleges that DEFENDANT GUTIERREZ fraudulently permitted the general public, on its global release date in January 2012, and that he had originally laid out and presented, by and through the hacked FRAUDULENT WEBSITE, to download all PLAINTIFF's prior/former sexual relations, past sexual assaults, past childhood molestation incidents, and even including everyday incidents of natural nudity via daily routine of hygienic practices, from and of, PLAINTIFF's past (childhood/adolescence/young adulthood) and present (adulthood), or 1996 to the current Year/Month/Date/Time to its global audience, and directly onto their personal computer hard drives, external drives, and/or digital cloud storage preference, knowingly, willingly, and deliberately against PLAINTIFF's will, and without the authorization or consent of PLAINTIFF and/or without the authorization or consent of any of her previous intimate/sexual partners also being victimized and permanently sex trafficked virtually in cyberspace.

121.   PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANT GUTIERREZ was permitted/allowed/enabled to constantly update all four (4) FRAUDULENT CELL PHONE APPLICATIONS on both DEFENDANT APPLE's APP STORE and DEFENDANT GOOGLE's PLAY STORE platforms, in order to allow the Paying John Does and/or Renters of his FRAUDULENT CELL PHONE APPLICATIONS to violently post excessive vulgarities in the form of edited pornographic imagery of PLAINTIFF and/or any of her previous intimate/sexual partners, knowingly, willingly, and deliberately against PLAINTIFF's will, and without the authorization or consent of PLAINTIFF and/or without the authorization or consent of any of her previous intimate/sexual partners also being victimized and permanently sex trafficked virtually in cyberspace.

122.   PLAINTIFF is informed, believes, and thereon alleges that the four (4) fraudulent, unlawful, and illegal cell phone applications that were hacked into four (4) different pornographic and pedophilic subscription-based cell phone applications were titled and priced; **(1)** "ATHENA" for a monthly subscription of $5.00 per month, **(2)** "ATHENA's TITS" for a monthly subscription of $5.00 per month, **(3)** "ATHENA's BATHROOM", for a monthly subscription of $5.00 per month, and **(4)** "ATHENA AND JANE ROE NO. 1" for a monthly subscription of $10.00 per month, (hereinafter combined and referred to as, "FRAUDULENT CELL PHONE APPLICATIONS") on both Defendant App Store platforms; DEFENDANT APPLE's APP STORE, each of the four (4) applications, and DEFENDANT GOOGLE's PLAY STORE, each of the four (4) applications. Thus, in total, eight (8) FRAUDULENT CELL PHONE APPLICATIONS on each of the two (2) Defendant App Store platforms.

123.   PLAINTIFF is informed, believes, and thereon alleges that DEFENDANTS O'BRIEN and GUTIERREZ are also selling these FRAUDULENT CELL PHONE APPLICATIONS and/or FRAUDULENT WEBSITE as "On-Demand" and/or "Pay Per View" FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS to

DEFENDANTS DIRECTV and AT&T, and further including numerous other Telecom corporations, or Telecom Sector Doe Defendants, inclusive.

124.   PLAINTIFF is informed, believes, and thereon alleges that the **initial motive** for DEFENDANT APPLE's and DEFENDANT GOOGLE's preposterous, atrocious, socially experimental, and inhumane behavior, conduct, and actions not only implemented control and ownership over the PLAINTIFF's name, identity, persona, life, body, and likeness, but further to have the ability to be able to make endless monetary gains in the form of ill-gotten gains, as each corporate Defendant, APPLE and GOOGLE, made 30% of  the monthly sales of each of the four (4) application subscriptions, for the past 10+ years, or since January 2012, by permitting DEFENDANTS GUTIERREZ and O'BRIEN to hack, distribute, and sell DEFENDANT J.C. REDDERSEN's misappropriation of the classified technology assets, or the FRAUDULENT WEBSITE, by hacking it into four (4) different FRAUDULENT CELL PHONE APPLCIATIONS on both the APPLE APP STORE and GOOGLE PLAY STORE.

125. PLAINTIFF is informed, believes, and thereon alleges that though PLAINTIFF is alleging that DEFENDANTS O'BRIEN and GUTIERREZ are also selling the FRAUDULENT CELL PHONE APPLICATIONS and/or FRAUDULENT WEBSITE as "On-Demand" and/or "Pay Per View" FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS to DEFENDANTS DIRECTV and AT&T, and further including numerous other Telecom corporations, or Telecom Sector Doe Defendants, inclusive, PLAINTIFF does not know what the percentage breakdown of the profit sales are with regard to the Telecom entities, or how many Telecom entities are involved in these blatantly fraudulent activities being executed in PLAINTIFF's name and identity.

126.   PLAINTIFF is informed, believes, and thereon alleges that DEFENDANT DROPBOX is publicly, willingly, knowingly, and deliberately permitting a fraudulent account, likely to be registered under the name, identity, and likeness of "ATHENA REDDERSEN" and registered to a currently unknown fraudulent e-mail address in PLAINTIFF's name, identity, and likeness by DEFENDANT GUTIERREZ and

O'BRIEN. Furthermore, DEFENDANT DROPBOX is aiding, and abetting said Corporate and Individual Defendants, inclusive, and the product/service of the FRAUDULENT WEBSITE by complicity and freely permitting the downloadable distribution of child pornography, gender-based violence, LGBTQ+ violence, and other obscenities directly onto its global audience's personal computer hard drives, external drives, and/or digital cloud storage preference, etc.

127.   PLAINTIFF is informed, believes, and thereon alleges that DEFENDANTS APPLE;   GOOGLE;   DROPBOX;   DIRECTV;   AT&T;   and   TELECOM   DOE DEFENDANTS', **second** additional motive for their preposterous, atrocious, socially experimental, and inhumane behavior, conduct, and actions taken against PLAINTIFF have been and currently are to sexually exploit PLAINTIFF's underage body and previous sexual relations; consensual and non-consensual, solely for entertainment and perverse reasons and to promote sexual violence against women, children, and the LGBTQ+ community.

128.   Furthermore, PLAINTIFF is informed, believes, and thereon alleges that, as a **third ulterior** motive, DEFENDANTS APPLE; GOOGLE; DROPBOX; DIRECTV; AT&T; and TELECOM DOE DEFENDANTS, inclusive, have been and currently are holding PLAINTIFF falsely imprisoned, hostage, and enslaved, via the misappropriated, embezzled, and complicit hacking of the FRAUDULENT WEBSITE, FRAUDULENT DROPBOX DOWNLOADS, FRAUDULENT CELL PHONE APPLICATIONS, and FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS, wherein they collectively display PLAINTIFF surveilled in real time, twenty-four hours a day and seven   days   a   week   (24/7)   on   the   Internet   and   on   a   state-sponsored cloud/network/server/software, in exchange for their sovereignty of not being held financially responsible and criminally accountable, as United States corporations/citizens. More specifically, by not being held accountable for piercing the corporate veil, the inhumane and mistreatment of United States citizens, the defrauding of the United States Government, and by being able to control and dictate PLAINTIFF's past, present, and

future by and through targeted, isolated, and unprecedented censorship, corporate intimidation, suppression, and oppression, and more specifically, ever since all said corporate Defendants complicitly hacked and sold the FRAUDULENT WEBSITE to a global audience in January 2012, and further, were complicit in selling it and diverting it into a pornographic and pedophilic transnational criminal enterprise and global sex trafficking ring by and through their combined corporate powers, intimidation campaign and repressive authoritative network.

129.   PLAINTIFF is informed, believes, and thereon alleges that DEFENDANTS APPLE; GOOGLE; DROPBOX; DIRECTV; AT&T; and TELECOM DOE DEFENDANTS, inclusive, are consciously and deliberately engaging in transnational terrorism and conspiracy to commit transnational terrorism, with all other said Individual Defendants and Individual/Corporate Doe Defendants, inclusive, at the expense of the PLAINTIFF's physical, emotional, mental, and psychological health and wellbeing, her civil rights and liberties, and State and Federal Constitutional rights.

130.   PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANT GUTIERREZ, though never been convicted of a sex crime, nor registered as a sex offender, has a history of dating underage girls, is a pedophile, rapist, and perpetrator and/or has pedophilic, rapist, and perpetrator tendencies.

131.   PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANT GUTIERREZ and O'BRIEN, have stolen the identity and continue to steal the identity, name, persona, and likeness of "ATHENA REDDERSEN" and has opened several fraudulent accounts under the name, identity, and likeness of "ATHENA REDDERSEN." Moreover, PLAINTIFF further alleges that some of these accounts include, but are not limited to, fraudulent e-mail addresses and internet/cloud service accounts, fraudulent mailing addresses, fraudulent bank accounts, and are further partaking in other fraudulent business practices, such as mail fraud, wire fraud, bank fraud, tax fraud, identity theft and identity fraud, all being done and executed in PLAINTIFF's name and identity, "ATHENA REDDERSEN." Additionally, DEFENDANT GUTIERREZ and O'BRIEN are

also specifically committing identity theft and identity fraud under PLAINTIFF's former partner of 2 years (from 2006-2008), Jane Roe No. 1, and especially during the pandemic years of 2020-2023. Furthermore, all financial transactions and distributions are being executed under the fraudulent App Developer, fraudulent website developer, and fraudulent adult film producer/entertainer, "ATHENA REDDERSEN," regardless of the isolated sexual exploitation, abuse, and virtual sex trafficking of Jane Roe No. 1, as the entire fraudulent operation was initially set up under PLAINTIFF's name and identity in January 2012.

132.   PLAINTIFF is informed, believes, and thereon alleges, that shortly thereafter, on or about February 27, 2012, less than two months after PLAINTIFF moved to the State of South Carolina, both DEFENDANT J.C. REDDERSEN and DEFENDANT M.D. REDDERSEN demanded PLAINTIFF leave their residence in the State of South Carolina, and subsequently bought her a plane ticket to the City of Las Vegas, State of Nevada, to live with DEFENDANT J.C. REDDERSEN'S mother, or PLAINTIFF's grandmother. The plane ticket, for the State of Nevada, was set for March 27, 2012 (attached hereto is an e-mail exchange confirming the flight to the State of Nevada from the State of South Carolina, *see* **Exhibit "P"**). PLAINTIFF further alleges that after she confronted both Defendants about being digitally monitored and/or surveilled in the privacy of her own room, in January 2012, DEFENDANT J.C. REDDERSEN and DEFENDANT M.D. REDDERSN secretly convened with one another, and further triggered both Defendants to abandon PLAINTIFF with no valid explanation, and without any exception to reconcile relations and/or differences with PLAINTIFF regardless of PLAINTIFF's plea to do so.

133.   PLAINTIFF further alleges that as mentioned above, both DEFENDANTS J.C. REDDERSEN and M.D. REDDERSEN knew that the FRAUDULENT WEBSITE was hacked and turned into a pornographic and pedophilic website before it was sold to corporate entities and went commercial  in January 2012, as they had to have been watching the hacking unfold in real time from the estimated years of 2009-2011, nonetheless, both Defendants had still offered PLAINTIFF a room in their South Carolina

residence in 2011. Therefore, PLAINTIFF additionally alleges that a primary motive for abruptly demanding PLAINTIFF leave their South Carolina residence in February 2012 was because they had both been publicly exposed of defrauding the United States Government by being live streamed on the Internet by and through the state-sponsored cloud/network/server/software DEFENDANT J.C. REDDERSEN pirated, stole misappropriated, and embezzled in and around 1996.

134.   Further, both Defendants were being publicly live streamed and broadcasted via the Telecom sector, such as AT&T and DIRECTV, by and through PLAINTIFF living with them at their South Carolina residence. Thus, both Defendants consciously deeming the hacking of the FRAUDULENT WEBSITE only unacceptable upon being publicly exposed and humiliated, contradictory to their initial invitation of domesticated residence to the PLAINTIFF in 2011, before the hacking of the FRAUDULENT WEBSITE was **sold** to numerous corporate entities in the entertainment sector, in January 2012.

135.   On April 7, 2012, for PLAINTIFF's 24th birthday celebration, DEFENDANT O'BRIEN and DEFENDANT GUTIERREZ, and two additional former high school mates, Eric Elenes (Class of '07) and Brandon Johnson (Class of '05), took PLAINTIFF to the Las Vegas Strip, where they had booked a room at the Luxor Resort & Casino for one night. PLAINTIFF further alleges that though, DEFENDANT O'BRIEN was unusually and frequently texting PLAINTIFF in and around January 16, 2012, while PLAINTIFF was living in the State of South Carolina, that April 7, 2012, was the first time PLAINTIFF had engaged with both, DEFENDANT O'BRIEN and DEFENDANT GUTIERRREZ, in person and together since 2006 or 2007.

136.   PLAINTIFF is informed, believes, and thereon alleges, that at the time, PLAINTIFF did not immediately connect the nexus that DEFENDANT GUTIERREZ and DEFENDANT O'BRIEN were directly responsible for the hacking of the FRAUDULENT WEBSITE and the hacked development of the four (4) FRAUDULENT CELL PHONE APPLICATIONS and four the (4) FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS. Furthermore, PLAINTIFF alleges that discussions and

conversations pertaining to the "surveillance state" PLAINTIFF was, and continues to be living in, did get brought up in the hotel room on the evening of April 7, 2012, by direct and indirect sexual innuendos based on actual events in PLAINTIFF's personal and private life. Further, PLAINTIFF alleges that references to the intrusive surveillance domain were made, as well as references to corruption in the corporate and government sectors. Moreover, PLAINTIFF further alleges that she did not assume DEFENDANT O'BRIEN and DEFENDANT GUTIERREZ were claiming responsibility by referring to PLAINTIFF's current and past private life events in blatant conversation with Eric Elenes and Brandon Johnson directly in front of PLAINTIFF, but rather reaffirmed PLAINTIFF that it was indeed, an open secret and public knowledge, that PLAINTIFF was being surveilled on the Internet, as PLAINTIFF had initially alleged while living in the State of South Carolina, in a confrontation with DEFENDANT J.C. REDDERSEN and DEFENDANT M.D. REDDERSEN. Additionally, the evening of April 7, 2012, made clear that the (24/7) digital surveillance of PLAINTIFF was following her from State to State since January 2012, further confirming and clarifying that she was not solely being digitally monitored by her parents while being in the privacy of her own room, as she initially suspected while living in the State of South Carolina, in the confrontation with both parental Defendants.

137. PLAINTIFF had initially met, and was former best friends, with DEFENDANT O'BRIEN in high school, when they first met, and since 2003. PLAINTIFF and DEFENDANT O'BRIEN remained friends until April 2014. PLAINTIFF (Class of '06) is one year older than DEFENDANT O'BRIEN (Class of '07), and further alleges that DEFENDANT O'BRIEN was dating DEFENDANT GUTIERREZ while DEFENDANT O'BRIEN was still in high school. PLAINTIFF further alleges that, though DEFENDANT O'BRIEN was dating DEFENDANT GUTIERREZ, PLAINTIFF had only formerly known DEFENDANT GUTIERREZ as an acquaintance and as a drug dealer, who was dealing marijuana and cocaine as a side gig, in 2006.

138.   PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANT GUTIERREZ is 6 years older than DEFENDANT O'BRIEN and had been dating DEFENDANT O'BRIEN since she was a minor, at 16 or 17 years old, while DEFENDANT GUTIERREZ was 22 or 23 years old. PLAINTIFF further alleges that DEFENDANT O'BRIEN was introduced to DEFENDANT GUTIERREZ through a manager at one of her summer jobs, Round Table Pizza, as a teenager in high school.

139.   On or around May 23, 2012, PLAINTIFF left the State of Nevada and hitchhiked back to the City of Los Angeles, State of California, by vehicle and remained homeless via couch surfing at a John Roe's house.

140.   During PLAINTIFF's three (3) month stay at John Roe's house, she attempted to look for employment but had the same issue with finding employment as she did in the State of Nevada and South Carolina from January 2012 to May 2012. PLAINTIFF remained unemployable due to imposed systemic discrimination and disparities by the institutionalization of her corporate enslavement, and further being devalued as less than human and as a second-class citizen because of being publicly and virtually sex trafficked by the (24/7) digital surveillance being enforced over her by and through the FRAUDULENT WEBSITE and its commercial corporate entities in the entertainment sector.

141.   Additionally, as previously mentioned above, PLAINTIFF was aware she was being surveilled on the Internet by her father, DEFENDANT J.C. REDDERSEN. Moreover, PLAINTIFF had little resources and/or detailed information about the entirety of the situation in the year 2012, as her father and stepmother, DEFENDANT J.C. REDDERSEN and M.D. REDDERSEN remained secretive and did not permit nor allow PLAINTIFF the respect of admitting to the existence of the FRAUDULENT WEBSITE, when previously confronted by the PLAINTIFF, while living in the State of South Carolina. Therefore, on or around July 21, 2012, PLAINTIFF became desperate for information regarding her circumstances and sought out ads on the Internet for anonymous tips. PLAINTIFF posted a Craigslist Ad in the free section titled, "Creative Gigs" and

asked for anonymous tips from the general public. On July 24, 2012, PLAINTIFF's Craigslist Ad in the Creative Gigs section was flagged for removal. Attached hereto is the Craigslist Ad PLAINTIFF posted on July 21, 2012, titled, "Athena Reddersen Seeks Anonymous Tip" with reference to the acknowledgment and existence of the FRAUDULENT WEBSITE, *see* **Exhibit "Q"**.

142.   Shortly thereafter, in or around mid-August 2012, PLAINTIFF was admitted to a mental asylum for a 72-hour psychiatric hold, in the City of Los Angeles, for suicidal tendencies due to the societal stressors and the after-effects of the authoritative repressive network PLAINTIFF was continuously and unprecedentedly experiencing and further forced to live under. On or around August 24, 2012, PLAINTIFF was again placed on a second psychiatric hold for the same reason, suicidal tendencies. Furthermore, PLAINTIFF was forced to stay in the psychiatric hospital for nearly 2-weeks the second time she was admitted. PLAINTIFF was then transferred to Orange County, California via ambulance to a sober living home and rehabilitation program, due to attempting suicide by morphine pill overdose. This ambulance transfer to an Orange County, California, sober living home was done by the request of a concerned friend of the PLAINTIFF, who also currently resides in Orange County, California.

143.   By September 06, 2012, PLAINTIFF was living in the city of Santa Ana, County of Orange, State of California, in a sober living home and until December 2012, when PLAINTIFF was released to live on her own, outside from the sober living rehabilitation home.

144.   PLAINTIFF is informed, believes, and thereon alleges that on or around May 24, 2013, DEFENDANT O'BRIEN and DEFENDANT GUTIERREZ invited PLAINTIFF to attend the Coachella Valley Music and Arts Festival, when tickets became available for the three (3) day event, scheduled for April 11 – 13, 2014. Plaintiff further alleges that the same individuals, that were present in Las Vegas, Nevada on April 7, 2012, Eric Elenes and Brandon Johnson, were also present at the April 11 – 13, 2014, Coachella Valley Music and Arts Festival, along with a few other former high school mates, who were also

1 in DEFENDANT O'BRIEN's class of '07, but were only known as acquaintances, and not
2 known on a personal basis to PLAINTIFF.

3     145. PLAINTIFF is informed, believes, and thereon alleges that on the late
4 evening of April 9, 2014, PLAINTIFF and a few other former classmates of '07, as
5 mentioned above, spent the night at Eric Elenes' house, in the City of Montebello, State of
6 California. PLAINTIFF further alleges that in the early hours of the next morning, on
7 April 10, 2014, Brandon Johnson (Class of '05), met up with PLAINTIFF and the group of
8 former classmates at Eric Elenes' house and left the City of Montebello to drive to the City
9 of Indio, California, towards the Coachella Valley, where PLAINTIFF and the group met
10 up with DEFENDANT GUTIERREZ and DEFENDANT O'BRIEN at a rest stop in a
11 Riverside County CVS Pharmacy parking lot.

12     146. PLAINTIFF is informed, believes, and thereon alleges that between the 36
13 hours of the late evening of April 9, 2014 to the early morning of April 11, 2014,
14 DEFENDANT O'BRIEN and PLAINTIFF's former high school mates kept hinting,
15 insisting, acknowledging, blaming, and "whistleblowing" (or informing PLAINTIFF of the
16 ongoing covert and illicit activity) that both DEFENDANT GUTIERREZ and
17 DEFENDANT O'BRIEN were responsible for the hacking of the FRAUDULENT
18 WEBSITE, as it had already been more than two (2) years after the initial hacking and
19 selling of the state-sponsored cloud/network/server/software and State-Sponsored Solar
20 Powered Tracking Device by and through the intentional misrepresentation of
21 PLAINTIFF's identity, to said Corporate Defendants and Corporate Doe Defendants,
22 inclusive.

23     147. PLAINTIFF further alleges that multiple Doe witnesses and/or former high
24 school mates, who were present in the group that weekend, further came out and bluntly
25 stated that "they did it" and "it was them" after constantly directly and indirectly referring
26 to the crisis and surveillance state PLAINTIFF was living in, and how much of the ill-
27 gotten gains "they" (Defendants Gutierrez and O'Brien) were making from selling "it" (the
28 Fraudulent Cell Phone Applications /Fraudulent On-Demand Adult Entertainment

Channels /Fraudulent Website/ Fraudulent Dropbox Downloads). PLAINTIFF additionally alleges that compared to the "celebratory" gathering of April 7, 2012, that the second gathering of April 9 to April 11, 2014, the gathering of individuals /Coachella goers was set in a more remorseful tone, especially amongst the former high school mates (but excluding Gutierrez, O'Brien, and Brandon Johnson), and was less focused on sexually harassing PLAINTIFF over her bodily appearance and former sex life with past significant others, and more focused on the horrific, dark, demented, and depressing circumstances and betrayals that were actively being made against PLAINTIFF in plain sight and on a fraudulent, unlawful and illegal public platform being facilitated, encouraged, and incited on the Internet.

148.   Furthermore, on, or about the morning of April 10, 2014, when Brandon Johnson (Class of '05) met with PLAINTIFF and the group of Coachella goers in Montebello, California, Johnson continued to directly and indirectly sexually harass and heckle PLAINTIFF for the duration of the drive to the Coachella Valley and kept repeatedly referring to the features of the FRAUDULENT WEBSITE and its multiple functions. Additionally, the two (2) hour drive to the Coachella Valley campgrounds was where PLAINTIFF got the primary source of her information on the functions and features of the FRAUDULENT WEBSITE. Moreover, though Johnson was being hostile and obscene in a passively aggressive fashion, and strictly through sexual innuendos, he too, seemed to be informed on the responsibility of the hacking of the FRAUDULENT WEBSITE, and further insisted the blame on DEFENDANT GUTIERREZ and DEFENDANT O'BRIEN, directly and indirectly, by and through "jokes" about their current financial state. DEFENDANTS GUTIERREZ and O'BRIEN were not in the vehicle during the two (2) hour drive to the Coachella Valley campgrounds. PLAINTIFF further alleges that she does not know whether Brandon Johnson is an accessory and/or is directly involved or became directly involved in the fraudulent business transactions in connection   with   the   FRAUDULENT   WEBSITE   /FRAUDULENT   DROPBOX

1  DOWNLOADS /FRAUDULENT CELL PHONE APPLICATIONS /FRAUDULENT
2  ON-DEMAND ADULT ENTERTAINMENT CHANNELS.

3      149. PLAINTIFF further alleges that once the entire group of Coachella goers
4  arrived on the Coachella campgrounds on the afternoon of April 10, 2014, DEFENDANT
5  GUTIERREZ and DEFENDANT O'BRIEN became more brazen about claiming
6  responsibility without worrying about accountability by directly and indirectly admitting to
7  defaming PLAINTIFF, as they were technically the bad actors being "shielded" in various
8  ways by the fraud being done in PLAINTIFF's name and identity, and had already gotten
9  away with impunity in their sexually exploitative and illegal profiteering scheme for the
10 past 2+ years and had concluded and assumed that federal authorities were not going to
11 shut down the FRAUDULENT WEBSITE, nor hold anyone accountable. Moreover,
12 PLAINITIFF further alleges that for the duration of PLAINTIFF's time on the Coachella
13 campgrounds, she was constantly harassed, heckled, and psychologically tormented, and
14 further alleges that at several instances, multiple persons unknown to PLAINTIFF and/or
15 Doe Witnesses of the commercial advertisements of the FRAUDULENT WEBSITE
16 /FRAUDLENT CELL PHONE APPLICATIONS /FRAUDULENT ON-DEMAND
17 ADULT ENTERTAINMENT CHANNELS, kept directly and indirectly telling
18 PLAINTIFF, "They're selling you," "It's fraud," "It's under your name," "There's four of
19 them," "It's number one in the App Store," "You're being monitored," "It's a website,"
20 and "You're on television."

21      150. PLAINTIFF is informed, believes, and thereon alleges that since 2012, she
22 has been harassed by the general public, persons unknown to her, and including persons
23 well known to her, about the fraudulent and unlawful repressive surveillance network
24 being executed in her name and that is constantly monitoring her in her daily life and in
25 her past and private life experiences and personal affairs. PLAINTIFF further alleges that
26 the variations of public harassment have fluctuated, in that at times, the harassment was
27 hostile, passive aggressive, and ill-mannered and seen more as a cruel game people
28 engaged in for a reaction, and at other times, it had a more matured tone with a concern for

the health and well-being of the PLAINTIFF, wherein individuals would make statements directly to her without malice intent and/or intentional PTSD triggers, and therefore, would act as more of an unconventional "whistleblower" concern and/or as an informant without an agenda, as described above, than a malicious and cruel game rooted in trauma that has been manufactured and dictated by the public on the Internet, as well as in-person. PLAINTIFF additionally alleges, that the above-mentioned (Coachella campground) Doe Witnesses of the publicly available FRADUELENT WEBSITE and its extended for-sale corporate sector fraudulent interactive services were unprecedentedly and unconventionally blowing the whistle, as concerned United States citizens.

151.  PLAINTIFF is informed, believes, and thereon alleges that the unusual pattern of behavior described above, in both the cruel and manufactured social triggers and the unconventional whistleblowers /informants without an agenda, that PLAINTIFF publicly encountered throughout the years, since 2012, and especially in the years 2022 and 2023, is what additionally lead the PLAINTIFF to piece together the entire repressive network and its detailed functions and defamatory operations. As a proximate result of the dissemination of the ever-evolving defamatory digital content, and the abusive distribution and disclosures being socially engineered and dictated, PLAINTIFF, in the year 2023, is able to accurately explain in explicit detail how the FRAUDULENT WEBSITE is currently operating in the current year, which completely differs from its hacked operational origins of the FRAUDULENT WEBSITE in 2012.

152.  On, or about the early morning of April 11, 2014, PLAINTIFF was arrested at the Coachella Valley Music and Arts Festival in the City of Indio, County of Riverside, for pepper spraying DEFENDANT GUTIERREZ and DEFENDANT O'BRIEN (attached hereto is the Indio Police Report, PLAINTIFF's Indio PD Citizen Complaint, and the initial Complaint/Protective Order and First Amended Complaint by the State of California v Athena Reddersen, *see* **Exhibit "R"**), after verifying that they had both been responsible for locating, hacking, distributing, and selling DEFENDANT J.C. REDDEREN's FRAUDULENT WEBSITE and developing it into a pornographic and pedophilic website

1  via the four (4) FRAUDULENT CELL PHONE APPLICATIONS / FRAUDULENT
2  DROPBOX DOWNLOADS and four (4) FRAUDULENT ON-DEMAND ADULT
3  ENTERTAINMENT CHANNELS, wherein DEFENDANTS GUTIERREZ and O'BRIEN
4  were fraudulently portraying themselves under the name, identity, persona, and likeness of
5  "ATHENA REDDERSEN," a fraudulent application developer, website developer, adult
6  film producer/entertainer, and fraudulent sex worker /Cam Girl on DEFENDANT
7  APPLE's APP STORE, DEFENDANT GOOGLE's PLAY STORE, and DEFENDANTS
8  DIRECTV and AT&T's On-Demand streaming platforms.

9       153. PLAINTIFF is further informed, believes, and thereon alleges that above
10  mentioned Coachella goers, such as Eric Elenes and Brandon Johnson, etc. had sided with
11  DEFENDANTS GUTIERREZ and O'BRIEN on the prosecution of PLAINTIFF, post the
12  Coachella arrest on April 11, 2014, regardless of their willful participation in informing
13  PLAINTIFF and bringing to her attention that DEFENDANTS GUTIERREZ and
14  O'BRIEN were the individuals responsible for the hacking of the FRAUDULENT
15  WEBSITE and its extended for-sale corporate sector fraudulent interactive services.
16  Furthermore, PLAINTIFF alleges that Elenes and/or Johnson were further pressured into
17  pressing charges after PLAINTIFF's arrest about 1 year and 3 months later, by
18  DEFENDANT O'BRIEN, during PLAINTIFF's case matter with the State of California.
19  Additionally, PLAINTIFF has no reason to believe Elenes and/or Johnson would be
20  willing to admit their above referenced admissions of provided information in the
21  responsibility of the hacked operations of the FRAUDULENT WEBSITE to PLAINTIFF
22  and/or testify on her behalf in this civil action.

23       154. PLAINTIFF is further informed, believes, and thereon alleges that
24  DEFENDANTS GUTIERREZ and O'BRIEN continue to fraudulently portray that the
25  FRAUDULENT    WEBSITE,    FRAUDULENT    DROPBOX    DOWNLOADS,
26  FRAUDULENT CELL PHONE APPLICATIONS, and FRAUDULENT ON-DEMAND
27  ADULT ENTERTAINMENT CHANNELS are a consensual pornographic and pedophilic
28  website/portal channels to the name, identity, persona, and likeness of "ATHENA

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

REDDERSEN." Additionally, DEFENDANTS GUTIERREZ and O'BRIEN continue to fraudulently portray these fraudulent channels and applications as consensual pornographic portal channels to the name, identity, persona, and likeness of Jane Roe No. 1, and/or PLAINTIFF's former intimate/sexual partner by and through the FRAUDULENT WEBSITE, wherein PLAINTIFF's 2-year relationship with Jane Roe No. 1 is vulnerable to sexual exploitation, abuse, and permanent virtual sex trafficking.

155. PLAINTIFF is informed, believes, and thereon alleges that though DEFENDANT J.C. REDDERSEN had originally pirated, misappropriated and developed the FRAUDULENT WEBSITE in and around 1996, individuals who were able to access the FRAUDULENT WEBSITE, prior to the year 2012, had to be aware of the PLAINTIFF's existence, identity, sexual identity and sexual history, and therefore, PLAINTIFF understood and was able to confirm that DEFENDANT O'BRIEN and DEFENDANT GUTIERREZ were, in fact, responsible for the hacking and selling of the state-sponsored FRAUDULENT WEBSITE and selling it to numerous corporate entities in the entertainment sector in January 2012.

156. PLAINTIFF further alleges that with the assistance of DEFENDANT O'BRIEN, via a first and last name Internet search of "ATHENA REDDERSEN," sometime between the estimated years of 2009 and 2011, together, DEFENDANTS GUTIERREZ and O'BRIEN were able to access the FRAUDULENT WEBSITE, originally pirated and developed by DEFENDANT J.C. REDDERSEN, and hack it into four (4) different pornographic and pedophilic cell phone applications and adult entertainment channels. Furthermore, PLAINTIFF alleges that DEFENDANT O'BRIEN was absolutely aware of PLAINTIFF's sexual orientation and her sexual history and/or the years of her intimate/sexual relationship with Jane Roe No. 1, as DEFENDANT O'BRIEN knew and was introduced to Jane Roe No. 1 by PLAINTIFF in the years 2006-2008.

157. PLAINTIFF is informed, believes, and thereon alleges, that as the intrusive surveillance domain of the originally misappropriated state-sponsored FRAUDULENT WEBSITE was hacked and sold in 2012, it was no longer being "innocently" portrayed as

a cloud-based calendar timeline of PLAINTIFF's childhood development, adolescence and young adulthood and/or the videographic documentation of PLAINTIFF's private life story from eight-years-old, to the current Year/Month/Date/Time, but rather of a pornographic and pedophilic website, displaying PLAINTIFF in her most vulnerable, innocent, and private moments throughout her entire life, since the year 1996, and/or since the young and tender age of eight-years-old.

158.   PLAINTIFF is informed, believes, and thereon alleges, that the following is an elaboration of the four (4) fraudulent, unlawful, illegal, and hacked cell phone applications, which are each **globally available** on both, DEFENDANT APPLE's APP STORE, and DEFENDANT GOOGLE's PLAY STORE:

159.   **[Fraudulent Cell Phone Application No. 1.]** "ATHENA" for a monthly subscription fee of $5.00 per month. PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANT GUTIERREZ reprogrammed DEFENDANT J.C. REDDEREN's FRAUDULENT WEBSITE to develop this cell phone application, wherein this application is solely based on reprogramming the satellites connected to the experimentally implanted State-Sponsored Solar Powered Tracking Device and/or solar-powered semiconductor chip in PLAINTIFF, to always show or point the satellite imagery directly in PLAINTIFF's face, in real time, twenty-four hours a day and seven days a week (24/7). PLAINTIFF remains hostage, falsely imprisoned, decapitated, and enslaved, in **FRAUDULENT CELL PHONE APPLICATION NO. 1:**

(a)   PLAINTIFF further alleges that this Fraudulent Cell Phone Application, "Athena," has clear perverse intent, as DEFENDANT GUTIERREZ initially posted headshot photographs and videos of PLAINTIFF partaking in sexual acts, such as engaging in fellatio, cunnilingus, and also displaying videos and photographs of PLAINTIFF's facial expressions as she is being sexually penetrated, and being on the receiving end of other sexual acts, including oral sex and self-masturbation, and therefore, publicly displaying PLAINTIFF's sexual facial expressions and

orgasms, etc., online via the FRAUDULENT WEBSITE and Fraudulent Cell Phone Application No. 1, titled, "Athena."

(b)   PLAINTIFF   additionally   alleges   that   DEFENDANT GUTIERREZ also categorized the photographs and videos of PLAINTIFF's face and sexual facial expressions and activities (throughout her entire life) into categorized and downloadable Dropbox folders (available for free download to the general public). More Specifically, DEFENDANT GUTIERREZ categorized PLAINTIFF's face in downloadable Dropbox folders by the age/date/sexual activity/etc. of PLAINTIFF, so that the public has full access to view PLAINTIFF's sexual facial expressions, orgasms, and facial development from eight-years-old, into adolescence and young adulthood, and therefore, publicly displaying PLAINTIFF's face and sexual activity at all ages, online via the FRAUDULENT WEBSITE and Fraudulent Cell Phone Application No. 1, titled, "Athena."

(c)   Furthermore,   DEFENDANTS   GUTIERREZ;   APPLE; GOOGLE; and DROPBOX are allowing Paying John Does and/or Renters from around the world, to maliciously post excessive duplicates and downloadable Dropbox links of the same initial videos and photographs (from different angles, magnifications, and timeframes) that were already initially put on public display by DEFENDANT GUTIERREZ in 2012. PLAINTIFF additionally alleges that her face/head/neck portion of her body is also being exploited as a minor child and adolescent from age range of eight-years-old to eighteen-years-old. Moreover, that this Fraudulent Cell Phone Application No. 1 was in the Top 10 "best-selling" paid cell phone applications in both DEFENDANT APPLE's and DEFENDANT GOOGLE's App Store platforms, upon its initial release in 2012. PLAINTIFF further alleges that this application remains a Top 100 "best-selling" application in both App Store platforms.

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

160.  **[Fraudulent Cell Phone Application No. 2.]** "ATHENA's TITS" for a monthly subscription of $5.00 per month. PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANT GUTIERREZ reprogrammed DEFENDANT J.C. REDDEREN's FRAUDULENT WEBSITE to develop this cell phone application, wherein this application is solely based on reprogramming the satellites connected to the experimentally implanted State-Sponsored Solar Powered Tracking Device and/or solar-powered semiconductor chip in PLAINTIFF, to always show or point the satellite imagery directly in PLAINTIFF'S breasts, in real time, twenty-four hours a day and seven days a week (24/7). PLAINTIFF remains hostage, falsely imprisoned, disfigured, and enslaved, in **FRAUDULENT CELL PHONE APPLICATION NO. 2:**

(a)  PLAINTIFF further alleges that this Fraudulent Cell Phone Application, "Athena's Tits," has clear perverse intent, as DEFENDANT GUTIERREZ initially posted photographs and videos of PLAINTIFF'S breasts, all throughout her child development, adolescence, and into young adulthood, online via the FRAUDULENT WEBSITE and Fraudulent Cell Phone Application No. 2, titled, "Athena's Tits."

(b)  PLAINTIFF additionally alleges DEFENDANT GUTIERREZ also categorized the photographs and videos of PLAINTIFF's breasts (throughout her entire life) into categorized and downloadable Dropbox folders (available for free download to the public). More specifically, DEFENDANT GUTIERREZ categorized PLAINTIFF's breasts in downloadable Dropbox folders by the age, date, and sexual activity of PLAINTIFF, so that the public has full access to view PLAINTIFF's breasts and her female development from eight-years-old, into adolescence and young adulthood, and therefore, publicly displaying PLAINTIFF's breasts at all ages, online via the FRAUDULENT WEBSITE and Fraudulent Cell Phone Application No. 2, titled, "Athena's Tits."

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

(c)   Furthermore,   DEFENDANTS   GUTIERREZ;   APPLE; GOOGLE; and DROPBOX are allowing Paying John Does and/or Renters from around the world, to maliciously post excessive duplicates and downloadable Dropbox links of the same initial videos and photographs (from different angles, magnifications, and timeframes) that were already initially put on public display by DEFENDANT GUTIERREZ in 2012. PLAINTIFF additionally alleges that the breast/chest portion of her body is also being exploited as a minor child and adolescent from age range of eight-years-old to eighteen-years-old. Moreover, that this Fraudulent Cell Phone Application No. 2 was in the Top 10 "best-selling" paid cell phone applications in both DEFENDANT APPLE and DEFENDANT GOOGLE's App Store platforms, upon its initial release in 2012. PLAINTIFF further alleges that this application remains a Top 100 "best-selling" application in both App Store platforms.

161.   **[Fraudulent Cell Phone Application No. 3.]** "ATHENA's BATHROOM," for a monthly subscription of $5.00 per month. PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANT GUTIERREZ reprogrammed DEFENDANT J.C. REDDEREN's FRAUDULENT WEBSITE to develop this cell phone application, wherein this application is solely based on reprogramming the satellites connected to the experimentally implanted State-Sponsored Solar Powered Tracking Device and/or solar-powered semiconductor chip in PLAINTIFF, to always show or point the satellite imagery directly at PLAINTIFF while she is in the restroom taking showers, looking in the mirror, grooming her genitalia, and sitting on the toilet to relieve and clean herself, etc., in real time, twenty-four hours a day and seven days a week (24/7). PLAINTIFF remains falsely imprisoned, hostage, and enslaved in the bathroom at all age ranges in **FRAUDULENT CELL PHONE APPLICATION NO. 3:**

(a)   PLAINTIFF further alleges that this Fraudulent Cell Phone Application,   "Athena's   Bathroom,"   has   clear   perverse   intent,   as

DEFENDANT GUTIERREZ initially posted photographs and videos of PLAINTIFF's naked body in the restroom, all throughout her child development, adolescence, and into young adulthood, online via the FRAUDULENT WEBSITE and Fraudulent Cell Phone Application No. 3, titled, "Athena's Bathroom."

(b)     PLAINTIFF additionally alleges DEFENDANT GUTIERREZ also categorized the photographs and videos of her naked body (throughout her entire life) into categorized and downloadable Dropbox folders (available for free download to the public). More Specifically, DEFENDANT GUTIERREZ categorized PLAINTIFF's naked body in downloadable Dropbox folders with a broader range of specific categories and activities being facilitated by PLAINTIFF's natural hygienic practices such as taking showers, sitting on the toilet, shaving, grooming, getting dressed/undressed, etc. Furthermore, DEFENDANT GUTIERREZ categorized the images and videos of PLAINTIFF'S genitalia, such as her vagina, pubic hair, buttocks, and breasts, so that the public has full access to view PLAINTIFF's naked body and her female development from eight-years-old, into adolescence and young adulthood, and therefore, publicly displaying PLAINTIFF's naked body at all ages, online via the FRAUDULENT WEBSITE and Fraudulent Cell Phone Application No. 3, titled, "Athena's Bathroom."

(c)     Furthermore, DEFENDANTS GUTIERREZ; APPLE; GOOGLE; and DROPBOX are allowing Paying John Does and/or Renters from around the world, to maliciously post excessive duplicates and downloadable Dropbox links of the same initial videos and photographs (from different angles, magnifications, and timeframes) that were already initially put on public display by DEFENDANT GUTIERREZ in 2012. PLAINTIFF additionally alleges that her being naked in the restroom is also being exploited as a minor child and adolescent from the age range of eight-years-

old to eighteen-years-old. Moreover, that this Fraudulent Cell Phone Application No. 3 was in the Top 5 "best-selling" paid cell phone applications in both DEFENDANT APPLE and DEFENDANT GOOGLE's App Store platforms, upon its initial release in 2012. PLAINTIFF further alleges that this application remains a Top 5 "best-selling" application in both App Store platforms.

162.   **[Fraudulent Cell Phone Application No. 4.]** "ATHENA AND JANE ROE NO. 1" for a monthly subscription of $10.00 per month, (herein after referred to and combined as, "FRAUDULENT CELL PHONE APPLICATIONS"). PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANT GUTIERREZ reprogrammed DEFENDANT J.C. REDDEREN's FRAUDULENT WEBSITE to develop this cell phone application, wherein this application is solely based on reprogramming the satellites connected to the experimentally implanted State-Sponsored Solar Powered Tracking Device and/or solar-powered semiconductor chip in PLAINTIFF, to always show or point the satellite imagery directly at PLAINTIFF and her former girlfriend/partner, Jane Roe No. 1, from the years 2006 to 2008, while they engaged in sexual activity with each other throughout their entire 2-year relationship, twenty-four hours a day and seven days a week (24/7). PLAINTIFF and her former girlfriend/partner, Jane Roe No. 1, remain falsely imprisoned, hostage, enslaved, decapitated, and disfigured, in their past and former relationship from the years 2006-2008, in **FRAUDULENT CELL PHONE APPLICATION NO. 4:**

(a)   PLAINTIFF further alleges that this Fraudulent Cell Phone Application, "Athena and Jane Roe No. 1," has clear perverse intent, as DEFENDANT GUTIERREZ initially posted photographs and videos of both PLAINTIFF and Jane Roe No. 1's naked and vulnerable bodies in the privacy of their own shared apartment, bedroom, restroom, vehicle, etc., and all throughout their barely legal years together, from age ranges of 18-years-old

to 20-years-old, online via the FRAUDULENT WEBSITE and Fraudulent Cell Phone Application No. 4, titled, "Athena and Jane Roe No 1."

(b)    PLAINTIFF additionally alleges DEFENDANT GUTIERREZ also categorized the photographs and videos of both sexually exploited victims' naked bodies and sexual activities (throughout their entire 2-year relationship) into categorized and downloadable Dropbox folders (available for free download to the public). More Specifically, DEFENDANT GUTIERREZ categorized PLAINTIFF and Jane Roe No. 1's sexual activity in downloadable Dropbox folders with a broader range of specific categories and activities being facilitated by PLAINTIFF and Jane Roe No. 1's sexual activities both together, and separately, and eventually as individuals in their own separate fraudulent "sex profiles," and further including when engaging in consensual threesomes.

(c)    Additionally, and more specifically, Jane Roe No. 1 is being sexually exploited with her own categorized downloadable folders and sex trafficking profile /portal /channel with categories labeled under her real birth name, for example, "Jane Roe No. 1's genitalia" (including, but not limited to her vagina, breasts, and buttocks, etc.), and further including isolated sexual acts, such as engaging in fellatio, cunnilingus, getting sexually penetrated, and additionally including Jane Roe No. 1's sexual facial expressions, etc. The public has full access to view PLAINTIFF and Jane Roe No. 1's naked bodies, and their private and intimate former 2-year relationship from 2006 to 2008 as young adults, and therefore, publicly displaying PLAINTIFF and her former girlfriend/partner, Jane Roe No. 1's vulnerable naked bodies, online via the FRAUDULENT WEBSITE and Fraudulent Cell Phone Application No. 4, titled, "Athena and Jane Roe No 1."

(d)    Furthermore,    DEFENDANTS    GUTIERREZ;    APPLE; GOOGLE; and DROPBOX are allowing Paying John Does and/or Renters

76

1              from around the world, to maliciously post excessive duplicates and

2              downloadable Dropbox links of the same initial videos and photographs (from

3              different angles, magnifications, and timeframes) that were already initially

4              put on public display by DEFENDANT GUTIERREZ in 2012. PLAINTIFF

5              additionally alleges that this Fraudulent Cell Phone Application No. 4 was the

6              Top #1 "best-selling" paid cell phone application in both DEFENDANT

7              APPLE and DEFENDANT GOOGLE's App Store platforms, upon its initial

8              release in 2012. PLAINTIFF further alleges that this application remains a

9              Top 5 "best-selling" application in both App Store platforms.

10     163. PLAINTIFF is informed, believes, and thereon alleges, that though

11 DEFENDANT GUTIERREZ hacked and titled Fraudulent Cell Phone Application No. 4,

12 "Athena and Jane Roe No. 1," PLAINTIFF alleges that in this particular fraudulent cell

13 phone application, it has every sexual encounter PLAINTIFF has had, outside of the

14 relationship with Jane Roe No. 1. As previously mentioned above, in the fraudulent

15 business model, this is all made possible through DEFENDANT J.C. REDDEREN's initial

16 programming of the FRAUDULENT WEBSITE, wherein he created a real time cloud-

17 based "calendar archive" of PLAINTIFF's personal and private life events/affairs.

18 Therefore, all former sexual relations/encounters are accessible by and through

19 PLAINTIFF's fraudulent calendar archive timeline. Additionally, all sexual activity of

20 PLAINTIFF is easily accessible by Year/Month/Date/Time in the unedited timeline of the

21 cloud-stored calendar archive of PLAINTIFF's digitally documented life story.

22     164. Furthermore, there are additional relationships being sexually exploited in this

23 application and including being available for free download via Dropbox, for example, a

24 Jane Roe No. 2 from 2009 to 2010, when PLAINTIFF was 21 years old, and further

25 including a Jane Roe No. 3 in 2004, when PLAINTIFF was a minor, and a 16-year-old

26 teenager. PLAINTIFF further alleges that in this fraudulent application, "Athena and Jane

27 Roe No. 1" other sexual affairs, hookups, non-sexual flings and crushes, sexual assaults,

28 and childhood molestation incidents, are all present in this fraudulent cell phone

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

1   social media platform are discussing and posting on the defamatory "public forum" and/or
2   "chatroom" and/or comments section of the FRAUDULENT WEBSITE.

3       167.   PLAINTIFF   further   alleges   that   by   and   through   unconventional
4   whistleblowers and/or informants without an agenda and/or Doe Witnesses of the
5   FRAUDULENT WEBSITE, it is alleged that in the past two years, from 2020-2022, and
6   specifically since the COVID-19 pandemic lockdown in 2020, DEFENDANT
7   GUTIERREZ has created fraudulent "porn profiles" of every and any individual that
8   PLAINTIFF has had sexual relations with, wherein all of PLAINTIFF's former sexual
9   relations are being "separated" into their own pornographic and magnified profiles and by
10  first name of the photographically and videographically targeted victim, being facilitated,
11  disseminated, and disseminated  by and through the Paying John Does and/or Renters,
12  therefore creating an "expansion" of the forced labor, peonage, involuntary servitude,
13  virtual enslavement, and global/virtual sex trafficking ring within its repressive corporate
14  network.

15      168.   More specifically, DEFENDANT GUTIERREZ has turned the public and
16  fraudulent pornographic profiles into a cruel and inhumane "game" for public
17  entertainment, wherein the Defendant updated the layout of the FRAUDULENT
18  WEBSITE to allow for the Users /Rogue Army of the fraudulent social platform and/or
19  "the community" to "vote" on which sex slave they prefer best and/or which victim is
20  "better" and/or is the "better performer." This malicious, hateful, and preposterous tactic
21  that DEFENDANT GUTIERREZ implemented has further incited more recruits for
22  malicious and cruel content of the victimized Jane and John Roes and has further helped
23  promote additional financing of this specific cell phone application, "Athena and Jane Roe
24  No. 1," as well as the other three (3) fraudulent applications, and specifically during the
25  years 2020 to 2023. Attached hereto is an e-mail Plaintiff sent to herself, titled, "Journal
26  Entry 02/11/23," which she wrote in order to organize her thoughts and interpretations of
27  what she had been publicly exposed to, been experiencing in the last 6 months, and the
28

1 hateful, cruel, and malicious pattern of behavior she had been subjected to recently, *see*
2 **Exhibit "S"**.

3      169. PLAINTIFF is informed, believes, and thereon alleges, that as mentioned
4 above, DEFENDANT GUTIERREZ is permitting, encouraging, and inciting Paying John
5 Does and/or Renters, or Doe Defendants, inclusive, to vandalize, loot, ransack, raid, stalk,
6 steal, and distribute various moments, memories, and life experiences of the PLAINTIFF's
7 personal and private life, and has subsequently made all public postings and manipulated
8 publications  by both DEFENDANT GUTIERREZ and Doe Defendants, inclusive,
9 available for free download per each categorized, tagged, and looted publication on the
10 FRAUDULENT WEBSITE, throughout the past 27 years of PLAINTIFF's life, and/or
11 since 1996 and the existence of the FRAUDULENT WEBSITE's cloud-based calendar
12 archive, originally implemented, manipulated, and dictated by DEFENDANT J.C.
13 REDDERSEN.

14      170. PLAINTIFF is informed, believes, and thereon alleges, that the three (3) main
15 features and functions of the FRAUDULENT WEBSITE that assists with its entire virtual
16 sex trafficking operations in cyberspace (hereinafter referred to as "The 'Athena
17 Reddersen' Sex Trafficking Enterprises") are the following:

18      (1) The layout provides an endless pornography and/or child
19      pornography feed, continuously displaying manipulated images of hate and
20      violence against women and children, strictly from the private and personal
21      affairs of the PLAINTIFF's private life story, personal history, her memories
22      and experiences, and by it being publicly looted, vandalized, destroyed,
23      seized, invaded, ransacked, manipulated and posted/published by perpetrating
24      Paying John Does and/or Renters of the FRAUDULENT CELL PHONE
25      APPLICATIONS being provided by the APPLE APP STORE and/or the
26      GOOGLE PLAY STORE. Additionally, the perpetrating Permissive Users
27      (the Rogue Army) are also facilitating, inciting, and encouraging the virtual
28      sex trafficking operations in cyberspace by aiding and abetting the

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

application, and further included multiple exploited and victimized Jane and John Roes throughout PLAINTIFF's illegally surveilled life story, from 1996 to 2010, wherein PLAINTIFF has her last relationship and sexual encounter. Moreover, PLAINTIFF further alleges that all said exploited and victimized Jane and John Roes are also being held hostage, falsely imprisoned, enslaved and permanently virtually sex trafficked in this Fraudulent Cell Phone Application No. 4, titled "Athena and Jane Roe No. 1" and further including in the FRAUDULENT WEBSITE and/or FRAUDULENT DROPBOX DOWNLOADS and/or FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS.

165.   Additionally, as mentioned above, the same FRAUDULENT CELL PHONE APPLICATIONS available on DEFENDANT APPLE's APP STORE and DEFENDANT GOOGLE's PLAY STORE are also available as fraudulent adult entertainment channels on DEFENDANT DIRECTV and DEFENDANT AT&T's On-Demand streaming services platform. PLAINTIFF further alleges that there are additional Telecom corporations, or Telecom Doe Defendants, inclusive, who are also selling these FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS to the general public on their televised streaming platforms and services.

166. PLAINTIFF is informed, believes, and thereon alleges, that though Fraudulent Cell Phone Application No. 4, titled, "Athena and Jane Roe No. 1," continues to be in the Top 5 bestselling applications in both App Store platforms in 2023. PLAINTIFF further alleges that DEFENDANT GUTIERREZ is constantly updating and reinventing this cell phone application /webpage layout, as the fraudulent, inhumane, and immoral "moderator" to the platform and of all communications and correspondence between the Internet Trolls, Paying John Does and/or Renters and the Freeloading Does and/or Permissive Users (the Rogue Army). Therefore, DEFENDANT GUTIERREZ is dictating the layout of the FRAUDULENT WEBSITE by and through what the Users and/or the "community" of the fraudulent, unlawful, unconstitutional, illegal, and cruel

PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES

perpetrating Renters on both App Store platforms by and through their stalking habits of the cloud-based calendar archive timeline and subsequent suggestive demands of explicit manipulated imagery by providing said Year/Month/Date/Time of all suggested/demanded/requested imagery of PLAINTIFF and further including of the other victimized Jane and John Roes throughout PLAINTIFF's life, in the comments section and/or chat room of the FRAUDULENT WEBSITE;

(2) The layout also provides the initial broadcasted and state-sponsored cloud-based "calendar archive" timeline and/or online time machine (1996 to the current Year/Month/Date/Time) of PLAINTIFF's private life story, personal history, and life events that DEFENDANT J.C. REDDERSEN originally manipulated, dictated, and implemented in and around 1996 by and through his software piracy, conversion, misappropriation, and embezzlement of state-sponsored technology assets. This state-sponsored cloud-based calendar archive feature provides and enables perpetrators and stalkers (the Rogue Army) with unlimited "ammunition" and pornographic material, and though the calendar archive is the "unedited" version of pornographic material, it is still being used to aid and abet manipulated publications through the purchase of the App Store platforms. Further, the calendar archive timeline can still be used as manipulated and dictated pornography by the Permissive User who does not have to pay for access to the calendar archive to use it for pornographic purposes by and through the unedited access, full picture, and enabled curser dictation, manipulation, and magnification enabled features; and

(3) The layout further provides a live broadcasting of the PLAINTIFF in the current time, date, month, and year, and in the privacy of her own residence and/or home and/or place of employment and/or whereabouts in general (etc.) and therefore, the PLAINTIFF has no absolute

Constitutional right to privacy, as her GPS location and physical address is openly disclosed twenty-four hours a day and seven days a week (24/7) on the FRAUDULENT WEBSITE. PLAINTIFF further has no privacy when she is practicing daily hygienic routines, such as restroom usage, etc. Additionally, due to being virtually trafficked in cyberspace, she is also trafficked in reality due to her having no absolute right to privacy, and therefore, is socially isolated in family, friendships, intimate relationships and building intimate relationships.

171.   Additionally, PLAINTIFF alleges that though all said features are available for sale by and through numerous corporate entities in the Telecom sector, or Telecom Sector Doe Defendants, inclusive, the FRAUDULENT WEBSITE and its various features being sold to the numerous entities, are also available for free of charge on the Internet.

172.   Furthermore, PLAINTIFF alleges that Paying John Does and/or Renters, or Doe Defendants, inclusive, are spending a lot of time, not only stalking PLAINTIFF's past, but present day and making public postings of PLAINTIFF's "daily life routines" on the FRAUDULENT WEBSITE by and through the FRAUDULENT CELL PHONE APPLICATIONS, in order to sexually exploit and sex traffic PLAINTIFF when she is vulnerable to being subjected to sexual objectification in doing normal and innocent daily activities, such as using the restroom, taking a shower, and getting dressed and undressed for work and/or school, etc. Additionally, since these FRAUDULENT CELL PHONE APPLICATIONS are being fraudulently purchased monthly and/or "rented" by Paying John Does and/or Renters from all around the world, there are duplicates, in excess, of the same natural life experiences by PLAINTIFF and/or of her former significant others being exploited from various angles, magnifications, viewpoints, and timeframes. Moreover, PLAINTIFF further alleges that she has been overly sexualized, objectified, demeaned, and reduced and devalued as less than human, including as a minor child via the FRAUDULENT   WEBSITE,   FRAUDULENT   DROPBOX   DOWNLOADS   and

1   FRAUDULENT CELL PHONE APPLICATIONS throughout the past decade, and since
2   January 2012.

3       173. PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANT
4   GUTIERREZ reformatted and reprogrammed the layout of the FRAUDULENT
5   WEBSITE, initially developed by DEFENDANT J.C. REDERSEN, to mirror that of a
6   "pornographic website" in January 2012. More specifically, the FRAUDULENT
7   WEBSITE and FRAUDULENT CELL PHONE APPLICATIONS allow for vulgar, sexist,
8   misogynistic, derogatory, demeaning, discriminatory, and hateful public comments,
9   reviews and/or "performance ratings" to be posted by both Paying John Does and/or
10  Renters, as well as the Freeloading Does and/or Permissive Users (the Rogue Army), of
11  the FRAUDULENT WEBSITE. Additionally, PLAINTIFF further alleges that
12  DEFENDANT GUTIERREZ also reprogrammed the layout of the FRAUDULENT
13  WEBSITE to show how many times each pornographic video and/or image and/or live
14  broadcasting of PLAINTIFF has been "viewed" and/or how many "plays" are being
15  interacted with by its global audience on the Internet via the FRAUDULENT WEBSITE.
16  Moreover, PLAINTIFF additionally alleges that DEFENDANT GUTIERREZ has also
17  programmed and is further permitting and enabling the Paying John Does and/or Renters
18  and the Freeloading Does and/or Permissive Users (the Rogue Army) to have a "virtual
19  flashlight" and/or a night vision mode function, in order to view any sexual activity and/or
20  nudity in which originally occurred in the dark or with the lights out, on the
21  FRAUDULENT CELL PHONE APPLICATIONS and/or FRAUDULENT WEBSITE.

22      174. PLAINTIFF is informed, believes, and thereon alleges, that upon the initial
23  and fraudulent, unlawful, and illegal release and public debut in January 2012 of these four
24  (4) FRAUDULENT CELL PHONE APPLICATIONS on DEFENDANT APPLE's APP
25  STORE, DEFENDANT GOOGLE's PLAY STORE, and further including on
26  DEFENDANTS DIRECTV and AT&T's entertainment streaming platforms, and
27  numerous other Telecom Doe Defendants' adult entertainment streaming platforms, that
28  though these were clearly non-consensual and fraudulent pornographic

applications/entertainment platforms being mirrored on the FRAUDULENT WEBSITE, it was unprecedented, the first of its kind, and a "phenomenon" in that both the Paying John Does and/or Renters and Freeloading Does and/or Permissive Users (the Rogue Army) were and continue to be able to personally navigate, control, and dictate the 3-dimensional imagery of PLAINTIFF's past sexual activities and natural hygienic practices (taking showers, getting dressed/undressed, using the toilet, etc.) by using 360 degree angle manipulation capabilities and features that further permit high-definition zoom magnifications on the Internet, free of charge.

175. Furthermore, it should have been clear to said corporate Defendants and corporate Doe Defendants, inclusive, that the classified satellite systems and software that were being used to implement this kind of technology was state-sponsored, as these types of high-functioning and high-definition satellites are prone to be specifically intended to assist military defense satellite communication systems by classified spy satellites or Reconnaissance (RECON) satellites, specifically used in military aircraft. Additionally, PLAINTIFF further alleges that the documented, unprecedented, and experimental surgery that occurred in the State of Florida in and around December 1996 is further displayed, stored, presented, and available within the cloud-based "calendar archive" of PLAINTIFF's personal and private life events, and therefore, said corporate Defendants, Individual Defendants, and Doe Defendants, inclusive, should have been aware that the unprecedented experimental implantation of the State-Sponsored Solar Powered Tracking Device would further imply an inhumane medical/human experiment and medical emergency by and through the mistreatment, abuse, fraud, enslavement, and exposure to excessive and extreme sunlight/UV radiation within PLAINTIFF's internal and external body and biological structure. Further, Defendants knew or should have known the immensely punitive, defamatory, and brutally offensive content being targeted, forced, and imposed towards PLAINTIFF and specifically including, but not limited to, Jane Roe No. 1, would have been severely detrimental to the health, safety, well-being and reputation of all victims being virtually sex trafficked in cyberspace for entertainment purposes only.

176. PLAINTIFF is informed, believes, and thereon alleges that the FRAUDULENT CELL PHONE APPLICATIONS, FRAUDULENT DROPBOX DOWNLOADS, FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS, and FRAUDULENT WEBSITE became a publicly degrading, offensive, nuisance, and socially unacceptable "masturbation and humiliation game" for Paying John Does and/or Renters and the Freeloading Does and/or Permissive Users (the Rogue Army), to engage in, and in furtherance of joining forces, working together, and organizing and in order to loot, ransack, raid, seize, and vandalize PLAINTIFF's private life being publicly stored on the Internet, and in furtherance of finding more sexual encounters and sexual partners who were formally engaging in sexual activity with PLAINTIFF throughout her past, and to subsequently post them publicly on the FRAUDULENT WEBSITE, for its global audience to download for free via categorized DROPBOX folders/links.

177. Additionally, PLAINTIFF alleges that the only reason these fraudulent, unlawful, immoral, and illegal pornographic downloads are available for free to the public, while also being sold for monthly subscription fees on DEFENDANT APPLE's APP STORE, DEFENDANT GOOGLE's PLAY STORE, and additionally on DEFENDANTS DIRECTV and AT&T's adult entertainment channels, and Telecom Doe Defendants' adult entertainment channels, is because DEFENDANTS GUTIERREZ and O'BRIEN were not expecting a non-government response for several years thereafter the initial release and public debut of the FRAUDULENT CELL PHONE APPLICATIONS /FRAUDULENT DROPBOX DOWNLOADS /FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS /FRAUDULENT WEBSITE in January 2012, and nonetheless, a non-government response an entire decade later.

178. PLAINTIFF is informed, believes, and thereon alleges, that there is a diverse demographic of individuals, from all around the world, who visit this freely and publicly available FRAUDULENT WEBSITE, after the initial televised and Internet advertisement campaign aired in January 2012, and again in 2020-2022. PLAINTIFF further alleges that this diverse demographic of individuals include, but are not limited to: male and female

individuals /strangers /stalkers /squatters who do not want to pay for access to the explicit pornography and child pornography that is constantly streaming, broadcasting, and being publicly posted; male and female individuals /strangers /stalkers /squatters who only visit for the free Dropbox downloads being posted by DEFENDANT GUTIERREZ and his fraudulent clientele of Paying John Does and/or Renters, by and through DEFENDANT APPLE's APP STORE and DEFENDANT GOOGLE's PLAY STORE; male and female individuals /youth & teenagers /strangers /stalkers /squatters who are curious to see, and know what is going on, because the FRAUDULENT WEBSITE has become such a "social and cultural norm" and "phenomena" to obsess over and stalk regularly; male and female individuals /strangers /stalkers /squatters who are specifically there for the fantasy of the alternate reality of voyeurism and personal intrusion of a real person's private life story, sexual experiences, and memories being publicly displayed and easily accessible; and male and female individuals /stalkers /squatters /distant family members /direct family members /former and distant friends who may have known the PLAINTIFF personally, and are curious about what is going on /has been going on, in the PLAINTIFF's life, and the fraudulent content being published, distributed, and disseminated on the FRAUDULENT WEBSITE in PLAINTIFF's name and on behalf of the intentional misrepresentation of her identity, etc.

179. PLAINTIFF is informed, believes, and thereon alleges, that there are multiple Jane Roes that have been victimized, humiliated, demeaned, degraded, exploited, and subject to forced labor, virtual peonage, and/or involuntary servitude, other than Jane Roe No. 1. More specifically, all other sexually and intimately exploited Jane Roes have had their own profiles and/or categorized Dropbox folders and free downloadable links via DEFENDANT DROPBOX's file sharing services. Additionally, the primary reason Jane Roe No. 1 has her own FRAUDULENT CELL PHONE APPLICATION is because that former intimate/sexual and private relationship with the PLAINTIFF held a duration of 2 years, and further, because there was a lot more sexual exploration and activity between PLAINTIFF and Jane Roe No. 1, who remain publicly compromised, victimized, defamed,

1  digitally enslaved, and sexually exploited victims in cyberspace on the FRAUDULENT
2  WEBSITE.

3       180.  PLAINTIFF is informed, believes, and thereon alleges, that there are multiple
4  John Roes that have been victimized, humiliated, exploited, and subject to forced labor
5  and/or involuntary servitude in cyberspace. More specifically, that these John Roes also
6  have their own categorized Dropbox folders and free downloadable links via
7  DEFENDANT DROPBOX's file sharing services, in which include consensual sexual
8  activity with the PLAINTIFF and/or Jane Roe No. 1. Additionally, that these Dropbox
9  folders and free downloadable links via DEFENDANT DROPBOX's file sharing services,
10  with John Roes, also include the PLAINTIFF in non-consensual sexual activity, such as
11  PLAINTIFF being sexually assaulted, raped, and molested as a child, etc.

12       181.  PLAINTIFF is informed, believes, and thereon alleges, that, as previously
13  referred to above, and due to the repressive corporate network and all its participants,
14  conspirators, and aider and abettors, all mentioned victimized Jane and John Roes are too
15  intimidated, humiliated, and embarrassed to come forward, testify, and/or cooperate in this
16  civil action, due to the mass public presence, global broadcasting, and invasion of privacy
17  into their own personal lives, and including in their private family-love life, as all
18  victimized Jane and John Roes are in similar age to the PLAINTIFF, and are a part of the
19  aging millennial demographic. Thus, DEFENDANTS APPLE; GOOGLE; DROPBOX;
20  DIRECTV; AT&T; and Doe Defendants, inclusive, are knowingly engaging in
21  obstruction, concealment of evidence, intimidation tactics, and witness tampering in order
22  to further their profiteering scheme of  coercing the PLAINTIFF into forced labor in a
23  "public benefits" quid pro quo, wherein PLAINTIFF being subjected into forced labor
24  benefits both paying users and non-paying users, and therefore intimidates the public to
25  come forward, including those victimized by the profiteering and public benefits scheme.

26       182.  PLAINTIFF is informed, believes, and thereon alleges, that both,
27  DEFENDANT APPLE's APP STORE and DEFENDANT GOOGLE's PLAY STORE are
28  avidly and automatically collecting and/or deducting 30% of all FRAUDULENT CELL

PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES

1    PHONE APPLICATION sales on their APPLE APP STORE and GOOGLE PLAY

2    STORE platforms, for the past 10 years or since January 2012. More specifically,

3    PLAINTIFF alleges that both DEFENDANT APPLE and DEFENDANT GOOGLE are

4    embezzling, racketeering, and money laundering a potential estimated Hundreds of

5    Billions, if not Trillions, of Dollars in additional illegal revenue and profits by and through

6    their profiteering scheme of these four (4) FRAUDULENT CELLS PHONE

7    APPLICATIONS and due to both Big Tech corporate entities each collecting an estimated

8    30% of $25.00 per month of application sales for the past decade, or since January 2012.

9    Moreover, that this 30% service fee in application sales by both DEFENDANT APPLE

10   and DEFENDANT GOOGLE, are being collected from all over the world on an

11   international basis, and therefore, undoubtedly calculates to potentially more than

12   Hundreds of Billions, if not Trillions, of Dollars in their transnational profiteering scheme

13   throughout the past decade.

14       183.  Additionally, PLAINTIFF further alleges that DEFENDANTS APPLE and

15   GOOGLE's illegal profits have near doubled during the pandemic years 2020-2022, and

16   are still increasing in year 2023, further concluding that the highest profits from this end of

17   the authoritative repressive network have been in the years 2020-2023, and due to a

18   significant change in "operations" by the Rogue Army, or Doe Defendants, inclusive, who

19   are now in control of this state-sponsored technology and how it is being utilized,

20   disbursed, and disseminated.

21       184.  PLAINTIFF is informed, believes, and thereon alleges, that additionally,

22   DEFENDANTS DIRECTV, AT&T, and numerous other Telecom entities and/or Telecom

23   Sector Doe Defendants, inclusive, that are also selling the FRAUDULENT WEBSITE

24   /FRAUDULENT CELL PHONE APPLICATIONS to its global audiences, and are further

25   collecting percentage service fees from "ATHENA REDDERSEN" sales, or sales from the

26   four (4) FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS.

27   Furthermore, PLAINTIFF does not have the pricing data and/or service fee quantity for the

28

1  broadcasting of these said defamatory, fraudulent, wrongful, unlawful, illegal, and
2  immoral "adult entertainment" subscription channels.

3      185.  PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANTS
4  APPLE's APP STORE; GOOGLE's PLAY STORE; DIRECTV; AT&T; and  Telecom
5  Sector Doe Defendants, inclusive, are complicit in committing mail fraud, wire fraud, bank
6  fraud, tax fraud, identity theft and identity fraud by accepting, permitting, and enabling
7  DEFENDANTS  GUTIERREZ  and  O'BRIEN  to  fraudulently  impersonate  and
8  intentionally misrepresent the identity of and personality of the fraudulent application
9  developer /web developer, and fraudulent adult film producer/entertainer that goes by the
10  name, identity, persona, and likeness of "ATHENA REDDERSEN," and collectively did
11  so knowingly, willingly, deliberately, and fraudulently.

12      186.  More specifically, PLAINTIFF further alleges that DEFENDANTS APPLE's
13  APP STORE; GOOGLE's PLAY STORE; DIRECTV; AT&T; and  Telecom Sector Doe
14  Defendants, inclusive,  collectively permitted, enabled, and fraudulently legitimized
15  DEFENDANTS GUTIERREZ and O'BRIEN to apply as a fraudulent Application
16  Developer /Website Developer /Adult Film Entertainment Channel Producer/Entertainer
17  with a social security number that may or may have not matched the legal identity of
18  "ATHENA REDDERSEN," due to the intent, motive, and conspiracy of automatically
19  granting DEFENDANTS GUTIERREZ and O'BRIEN the ability to sell the four
20  FRAUDULENT CELL PHONE APPLICATIONS and FRAUDULENT ON-DEMAND
21  ADULT ENTERTAINMENT CHANNELS regardless of the fraudulent, unlawful,
22  immoral, unethical, and bad faith business practices/transactions, monetization of ill-gotten
23  gains, and blatant App Store policy violations in both the APPLE APP STORE and
24  GOOGLE PLAY STORE, and further including blatant ethical business practice violations
25  with both DEFENDANTS DIRECTV and AT&T and in furtherance of the goals of their
26  repressive corporate network.

27      187.  PLAINTIFF is informed, believes, and thereon alleges, that since January
28  2012, DEFENDANT APPLE is in violation of its own application developer policies and

**PLAINTIFF ATHENA REDDERSEN'S COMPLAINT FOR DAMAGES**

1 │ ethical business practices due to rogue App Store employees, managers, supervisors,
2 │ and/or executives.

3 │     188. PLAINTIFF is informed, believes, and thereon alleges, that since January
4 │ 2012, DEFENDANT GOOGLE is in violation of its own application developer policies
5 │ and ethical business practices due to rogue App Store employees, managers, supervisors,
6 │ and/or executives.

7 │     189. PLAINTIFF is informed, believes, and thereon alleges, that DEFENDANTS
8 │ APPLE; GOOGLE; DIRECTV; AT&T; GUTIERREZ; O'BRIEN; and Telecom Sector
9 │ Doe Defendants, inclusive, are complicitly operating, embezzling, racketeering, and
10 │ money laundering with unknown Banking system(s), or Banking Sector Doe Defendants
11 │ No. 3, inclusive, wherein DEFENDANT GIUTIERREZ is receiving fraudulent payroll
12 │ wages as an independent contractor by 1099 IRS tax form under the fraudulent identity of
13 │ "ATHENA REDDERSEN." More specifically, these fraudulent banking deposits are
14 │ being disbursed under four different fraudulent application titles from the APPLE APP
15 │ STORE and the GOOGLE PLAY STORE and further including being disbursed from the
16 │ four (4) FRAUDULENT ON-DEMAND ADULT ENTERTAINMENT CHANNELS
17 │ from DEFENDANTS DIRECTV, AT&T, and Telecom Sector Doe Defendants No. 2,
18 │ inclusive, further implying that there are several 1099 IRS tax forms DEFENDANT
19 │ GUTIERREZ is in possession of, as a fraudulent independent contractor with multiple
20 │ fraudulent businesses under PLAINTIFF's first and last name, "ATHENA
21 │ REDDERSEN."

22 │     190. PLAINTIFF is informed, believes, and thereon alleges, that Banking Sector
23 │ Doe Defendants No. 3, inclusive, or unknown Banking systems /corporations, are aiding
24 │ and abetting and acting in conspiracy with DEFENDANTS APPLE; GOOGLE;
25 │ DIRECTV; AT&T; GUTIERREZ; O'BRIEN; and Telecom Sector Doe Defendants No. 2,
26 │ inclusive, for not reporting suspicious banking transactions and/or fraudulent business
27 │ transactions, in which should be clear tip offs and/or red flags to the likelihood of
28 │ racketeering, money laundering, and organized crimes in massive amounts, quantities, and